1   Matthew Theriault (SBN 244037)
    Matthew.Theriault@capstonelawyers.com
2   Stan Karas (SBN 222402)
    Stan.Karas@capstonelawyers.com
3   Katherine Kehr (SBN 226559)
    Katherine.Kehr@capstonelawyers.com
4   Jonathan Lee (SBN 267146)
    Jonathan.Lee@capstonelawyers.com
5   Capstone Law APC
    1840 Century Park East, Suite 450
6   Los Angeles, California 90067
    Telephone:      (310) 556-4811
7   Facsimile:      (310) 943-0396

8   Attorneys for Plaintiffs
    Silken Brown and Mario de la Rosa

9

10  Scott Edward Cole, Esq. (SBN 160744)
    scole@scalaw.com
11  Stephen Noel Ilg, Esq. (SBN 275599)
    silg@scalaw.com
12  Scott Cole & Associates, APC
    1970 Broadway, Ninth Floor
13  Oakland, California 94612
    Telephone:      (510) 891-9800
14  Facsimile:      (510) 891-7030

15  Attorneys for Plaintiff Joseph Amey

16

17                  UNITED STATES DISTRICT COURT

18     NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

19  SILKEN BROWN, et al.              | **CONSOLIDATED CLASS ACTION**

20          Plaintiff,                | Case No.:  CV 13-04030 WHO

21      vs.                           | Hon. William H. Orrick

22  CINEMARK USA, INC., et al.        | **OPPOSITION TO MOTION TO DENY
                                        CERTIFICATION**
23
            Defendants.               | Hearing Date:  September 3, 2014
24                                      Time: 2 p.m.
                                        Courtroom: 2, 17th floor
25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS AND PROCEDURE .............................................................................. 2

      A.   Plaintiffs Each Held Multiple Job Titles and Suffered From the Same
           Policies And Practices ............................................................................. 2

      B.   Cinemark Routinely Understaffs Weekend and Holiday Shifts ................ 2

      C.   Cinemark Maintains a Policy Requiring Employees to Wait for
           Managers to Individually Authorize Rest Periods .................................. 3

      D.   Cinemark's Policies and Practices Result In Frequent Interrupted and,
           Therefore Non-Compliant, Breaks .......................................................... 3

      E.   Cinemark's Policies and Practices Resulted in Off-the-Clock Work .............. 3

III.  ARGUMENT ..................................................................................................... 4

      A.   Cinemark May Not Block Basic Class Discovery While Simultaneously
           Moving for Preemptive Denial Of Class Certification ............................. 4

      B.   Cinemark Has Failed to Demonstrate That Plaintiffs are Unable to
           Satisfy the Requirements for Class Certification ..................................... 7

           1.   The Commonality Standard ............................................................. 7

           2.   Cinemark Has Failed to Demonstrate That Plaintiffs Cannot Satisfy
                Certification Requirements as to the Meal and Rest Period Claims ............ 8

                (a)   Common Policies and Practices ........................................... 8

                (b)   Subclasses Can Accommodate Variations, If Necessary ............ 9

                (c)   Damages and Liability Are Not Relevant At This Stage .............. 10

           3.   Cinemark Has Failed to Demonstrate That Plaintiffs Cannot Satisfy
                Certification Requirements as to the Reporting Time Pay Claims ............ 11

           4.   Cinemark Has Failed to Demonstrate That Plaintiffs Cannot Satisfy
                Certification Requirements as to the Off-the-Clock Claims ...................... 13

      C.   A Class Action Is Plainly Superior To Thousands of Individual Actions ............ 16

D.    The Typicality Requirement Is Satisfied ....................................................... 16

E.    Defendant's Adequacy Attack Is Baseless ..................................................... 17

    1.    Amey Is Adequate to Represent the Class ........................................... 17

    2.    Cinemark's Claims Of Improper Solicitation Are Spurious ............... 18

        (a)    The Investigator Contacted Mr. De La Rosa To

                Investigate After Silken Brown Contacted Capstone ........................... 18

        (b)    The Investigator's Call to De La Rosa Was Not

                Solicitation, Much Less Improper Solicitation, Under

                Rule 1-400. ........................................................................................ 19

        (c)    Even If The Phone Call Had Been Solicitation—Which

                It Was Not—No Part Of That Phone Call Violated Rule

                1-400 .................................................................................................. 19

F.    Defendant's Attempt to Strike the Representative PAGA Claim Is

    Procedurally Improper and Without Merit ...................................................... 21

IV.    CONCLUSION ........................................................................................................ 23

OPPOSITION TO MOTION TO DENY CERTIFICATION

CV 13-04030 WHO

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003).................................................................. 13

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).................................................................... 16

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) .................................................................... 7

*Arredondo v. Delano Farms Co.*, 2014 U.S. Dist. LEXIS 22658 (E.D. Cal. Feb. 21, 2014)............................................................................................................................... 13, 14

*Artis v. Deere & Co.*, 276 F.R.D. 348 (N.D. Cal. 2011)............................................................. 4

*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117 (9th Cir. 2014) ............................21, 22, 23

*Campbell v. Wood,* 18 F.3d 662 (9th Cir. 1994) ........................................................................ 6

*Cardenas v. McLane Foodservice, Inc.*, No. SACV 10-473 DOC (FFMx), 2011 U.S. Dist. LEXIS 13126 (C.D. Cal. Jan. 31, 2011) ............................................................... 22

*Collins v. ITT Educ. Servs.*, 2013 U.S. Dist. LEXIS 183410 (S.D. Cal. July 29, 2013) ..........13, 14, 15, 17

*Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir. 1984) ......................................... 11

*Echavez v. Abercrombie & Fitch Co,* 2013 U.S. Dist. LEXIS 184971 (C.D. Cal. Aug. 13, 2013)........................................................................................................................... 23

*EEOC v. O & G Spring & Wire Forms Spec. Co.*, 38 F.3d 872 (7th Cir. 1994)...................... 11

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ................................... 7

*Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128 (N.D. Cal. 2013) ........................... 22

*Gripenstraw v. Blazin' Wings, Inc.*, 2013 U.S. Dist. LEXIS 179214 (E.D. Cal. Dec. 19, 2013)........................................................................................................................... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................................... 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)................................................... 16

*Henderson v. JP Morgan Chase Bank,* 2013 U.S. Dist. LEXIS 185101 (C.D. Cal. July 10, 2013)...................................................................................................................... 23

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ........................................................ 11

*Hughes v. WinCo Foods*, 2012 U.S. Dist. LEXIS 2469 (C.D. Cal. Jan. 4, 2012) ................... 18

1  *In re Autozone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ................................................. 18

2  *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) ............................ 15

3  *Josue Soto, et al. v. Diakon Logistics (Delaware), Inc.*, 2013 U.S. Dist. LEXIS 119028

4      (N.D. Cal. Aug 2013) ................................................................................. 9

5  *Kamm v. Cal. City Development Co.*, 509 F.2d 205 (9th Cir. 1975) ................................................ 4

6  *Kress v. Price Waterhouse Coopers,* 2011 U.S. Dist. LEXIS 87845 (E.D. Cal. Aug. 8,

7      2011) ................................................................................................ 4

8  *Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. 2007) ................................... 13

9  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ......................................... 16

10  *Leyva v. Medline Indus., Inc.*, 716 F. 3d 510 (9th Cir. 2013) ................................................... 12

11  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244

12      F.3d 1152 (9th Cir. 2001) ......................................................................... 18

13  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) .............................................. 7

14  *McKenzie v. Fed. Exp. Corp.*, 765 F. Supp. 2d 1222 (C.D. Cal. 2011) ........................................... 22

15  *Mendez v. Tween Brands, Inc.*, No. 2:10-cv-00072-MCE-DAD, 2010 U.S. Dist. LEXIS

16      66454 (E.D. Cal. June 30, 2010) ................................................................... 22

17  *Mullen v Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ............................................ 7

18  *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978) ......................................................... 20

19  *Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL, 2014 U.S. Dist. LEXIS 36833

20      (N.D. Cal. Mar. 18, 2014) (N.D. Cal. March 19, 2014) ............................................. 23

21  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................ 18, 23

22  *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ................................................................ 7

23  *Plaisted v. Dress Barn, Inc.*, No. 2:12-cv-01679-ODW (SHx), 2012 U.S. Dist. LEXIS

24      135599 (C.D. Cal. Sept. 20, 2012) ............................................................. 22, 23

25  *Rojas v. Marko Zaninovich, Inc.*, 2013 U.S. Dist. LEXIS 46212 (E.D. Cal. Mar. 28,

26      2013) ............................................................................................ 15

27  *Ross v. US Bank Nat'l Ass'n*, 2009 U.S. Dist. LEXIS 116875 (N.D. Cal. Nov. 25, 2009) ....................... 15

28

OPPOSITION TO MOTION TO DENY CERTIFICATION

CV 13-04030 WHO

*Sample v. Big Lot Stores, Inc.*, No. C 10-03276 SBA, 2010 U.S. Dist. LEXIS 131130

    (N.D. Cal. Nov. 30, 2010)...................................................................................................... 22

*Seckler v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 29940 (C.D. Cal. March 5, 2013)...................... 9

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)............................................................................ 17

*Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir. 1976)............................................................ 11

*Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982) ................................................................................... 4

*Stockwell v. City and County of San Francisco*, N.D. Cal. Case No.12-15070, D.C. No.

    4:08-cv-05180-PJH (9th Cir. Apr. 24, 2014)....................................................................... 10

*Sullivan v. Kelly Services, Inc.*, No. C 08-3893, 2010 U.S. Dist. LEXIS 50623 (N.D. Cal.

    April 27, 2010)...................................................................................................................... 16

*Sullivan v. Kelly Servs.*, 268 F.R.D. 356 (N.D. Cal. 2010)................................................................ 13

*Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-SKO, 2011 U.S. Dist.

    LEXIS 59377 (E.D. Cal. June 2, 2011) ............................................................................... 22

*Villalpando v. Exel Direct Inc.*, No. 12-cv-04137 JCS, 2014 U.S. Dist. LEXIS 42622

    (N.D. Cal. March 28, 2014).................................................................................................. 22

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009).......................................... 6, 7

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................................. 12

*Whiteway v. Fedex Kinko's Office and Print Servs., Inc.*, 2006 U.S. Dist. LEXIS 69193

    (N.D. Cal. Sept. 27, 2006)................................................................................................... 13

*Willner v. Manpower Inc.*, No. C 11-02846, 2012 U.S. Dist. LEXIS 62227 (N.D. Cal.

    May 3, 2012)......................................................................................................................... 22

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (2001) ........................................................ 16

## STATE CASES

*Arias v. Superior Court*, 46 Cal. 4th 969 (2009)............................................................................... 22

*Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004) ......................................................... 11

*Bradley v. Networkers Internat., LLC*, 211 Cal. App. 4th 1129 (2012) ........................................... 14

*Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)..................................... 12, 14, 15

1  *Collins v. Rocha*, 7 Cal. 3d 232 (1972).................................................................................. 7

2  *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220 (2013) .......................................... 14

3  *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286 (2010)................................................... 8

4  *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (2000)..................................................................... 16

5  *Newell v. State Farm General Ins. Co.*, 118 Cal. App. 4th 1094 (2004)..................................... 7

6  *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360 (2007).............................. 4

7  *Rose v. State Bar of California*, 49 Cal. 3d 646 (1989) ........................................................... 19

8  *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)................................7, 8, 11

9

10  **FEDERAL STATUTES**

11  C.D. Cal. L.R. 30-1 ....................................................................................................................... 5

12  Fed. R. Civ. P. 1-400....................................................................................................................20, 21

13  Fed. R. Civ. P. 1-400(B)(1) ....................................................................................................... 19

14  Fed. R. Civ. P. 1-400(C) ............................................................................................................ 20

15  Fed. R. Civ. P. 11 ....................................................................................................................... 20

16  Fed. R. Civ. P. 23 ...................................................................................................................*passim*

17  Fed. R. Civ. P. 23(b)(3)........................................................................................................7, 12, 24

18  Fed. R. Civ. P. 23(b)(3)(A) ....................................................................................................... 16

19  Fed. R. Civ. P. 30(b)(6) ............................................................................................................... 5

20

21  **STATE STATUTES**

22  Cal. Lab. Code §§ 2698 *et seq.* (Priv. Atty's. Gen. Act of 2004 (PAGA))...................................1, 22, 23, 24

23  IWC Wage Order No. 10-2001 subd 5(A) ................................................................................. 11

24

25  **SECONDARY AUTHORITIES**

26  NEWBERG ON CLASS ACTIONS (4th ed. 2003) ............................................................................ 7, 14

27

28

# I.   INTRODUCTION

The Court should deny Defendants Cinemark USA, Inc. and Century Theatres Inc.'s (collectively, "Cinemark") preemptive motion for denial of class certification because Cinemark has (1) refused to produce contact information for the class members, who are indisputably percipient witnesses; (2) refused to produce any time records for the class members, which would show that it engaged in a class-wide practice of denying employees their legally required meal and rest breaks; and (3) filed this motion before permitting Plaintiffs to take the deposition of its Person Most Knowledgeable with respect to the policies and practices at issue, an essential fact-gathering tool for a class action plaintiff.  Having denied Plaintiffs *any* meaningful classwide discovery, Cinemark now demands that the Court conclude—well before the class certification deadline, and before the pending discovery disputes are resolved—that class certification is legally impossible.  It is axiomatic that a party cannot withhold crucial pre-certification discovery while moving on an issue that demands such discovery.  Accordingly, it is premature for the Court to decide a Rule 23 motion.

In any event, even the existing evidence clearly demonstrates that class certification is not impossible as a matter of law, which is the standard that Cinemark must satisfy.  For instance, evidence, including the testimony of the three named plaintiffs from different jobsites, shows that Cinemark had policies and practices that discouraged class members from taking their timely meal and rest breaks and encouraged unpaid off-the-clock work.  Cinemark has also failed to rebut evidence that it had a policy of sending employees home before they completed at least half of their shift without providing reporting time pay.  This evidence is sufficient for the Court to deny Cinemark's preemptive motion to *deny* class certification.

Finally, Cinemark has not proffered any valid argument that this action cannot proceed under the Private Attorney General Act of 2004 ("PAGA").  In fact, Cinemark's arguments that Rule 23's class action requirements apply to representative PAGA actions are contrary to Ninth Circuit authority and the majority of district courts, including in this District.  Accordingly even if the Court preemptively denies class certification (and it should not), it should permit the action to proceed on a representative basis under PAGA.

1   **II.    FACTS AND PROCEDURE**

2   **A.    Plaintiffs Each Held Multiple Job Titles and Suffered From the Same Policies And**

3   **Practices**

4   Plaintiff Silken Brown worked for Cinemark for only seven months, but performed at least four

5   unique roles at a San Francisco theater, including Cash Handler, Concessions Worker, Usher, and a role

6   involving janitorial duties.  *See* Declaration of Stan Karas, Exh. A (Brown Depo. at 47:3-48:1). Plaintiff

7   Mario De La Rosa worked as a projectionist, a "rover," and multiple types of ushers in Tracy during his

8   one and one-half years at Cinemark.  *See id.*, Exh. B (De La Rosa Depo. at 64:10-21, 88:6-18). Plaintiff

9   Joseph Amey has worked for Cinemark since June 2003 (*see id.*, Exh. C (Amey Depo. at 33:2-4));[1]

10  having worked in concessions and the box office before he was promoted to Assistant Store Manager in

11  2005.  *Id.* at 44:10-45:3.  Mr. Amey has worked at four different Cinemark locations.  *Id.* at 33:5-15.

12  Despite the fact that the three named Plaintiffs worked at different locations and in different

13  roles, all three were subject to the same unlawful policies and practices related to understaffing,

14  discussed below.  Indeed, Cinemark admits that the exact same policies and practices, regarding meal

15  and rest breaks (Motion at 12:20-21 and 4:11-5:20), off-the-clock work (Motion at 5:21-6:18), and

16  reporting pay (Motion at 6:19-24 and 16:26-17:7) applied to all Class Members.  In other words, all

17  asserted claims in this matter involve policies and practices common to all Class Members.

18  **B.    Cinemark Routinely Understaffs Weekend and Holiday Shifts**

19  All three Plaintiffs testified that Cinemark's policy and practice of understaffing affected their

20  ability to take breaks.  *See* Brown Depo. at 95:25-97:11, 138:5-25 (weekends, premiers, and holidays

21  were insanely busy, which made it much more difficult to take breaks); De La Rosa Depo. at 83:20-23

22  (more difficult to get breaks on weekends); Amey Depo. at 65:22-71:19, 131:14-19 (understaffing led to

23  frequent violations; insufficient staff to take breaks); Amey Depo. at 65:22-66:25 (employees must

24  schedule breaks around others' schedules, especially when limited to "skeleton crews"); Amey Depo. at

25  69:16-71:19 (staff was especially insufficient during holidays, premiers, and during the summer).

26  Plaintiff Amey further explained that the identity of the manager on duty makes no difference for break

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [1] For the Court's convenience further references to the Plaintiffs' testimony will be to the
    pertinent excerpts of the deposition transcripts attached to the Karas Declaration as Exhibits A, B and C.

1  violations caused by understaffing. *See* Amey Depo. at 131:25-132:12.

2  **C.     Cinemark Maintains a Policy Requiring Employees to Wait for Managers to**

3  **Individually Authorize Rest Periods**

4  All Plaintiffs testified that they must wait for a manager's authorization to take rest breaks.

5  Plaintiff Brown explained that Cinemark maintains a policy whereby employees must check with

6  managers before taking breaks. *See* Brown Depo. at 69:7-25. Managers instruct employees when to take

7  breaks. *See* De La Rosa Depo. at 79:14-20; Amey Depo. at 206:19-207:17. Employees have to wait to

8  take breaks if they cannot locate a manager. *See* Brown Depo. at 134:15-23. One obvious problem this

9  policy causes is that managers instruct employees to take breaks late. *See* Amey Depo. at 78:11-79:12,

10  84:25-85:22. Managers also instruct employees to remain nearby during rest breaks in case they are

11  needed. Brown Depo. at 73:2-5. In other words, managers are prepared to interrupt an employee's

12  break whenever the employee may be needed for theater operations.

13  **D.     Cinemark's Policies and Practices Result In Frequent Interrupted and, Therefore**

14  **Non-Compliant, Breaks**

15  All Plaintiffs report that customers frequently interrupted their meal and rest breaks. Customers

16  grabbed employees during breaks, even if employees removed their badges; often there were no

17  coworkers around to answer the customer's questions; employees felt obligated to help customers

18  because of Cinemark's policy that the customer is always right. *See* De La Rosa Depo. at 116:8-123:25.

19  *See also* Brown Depo. at 154:11-155:8 (customers frequently interrupted her breaks; she witnessed other

20  employees experiencing similar violations); Amey Depo. at 182:8-183:23 (customers interrupt

21  employees' breaks).

22  **E.     Cinemark's Policies and Practices Resulted in Off-the-Clock Work**

23  All Plaintiffs report that they experienced unpaid hours due to off-the-clock ("OTC") work. *See*

24  Brown Depo. at 137:8-138:25 (asked to perform work OTC); Brown Depo. at 144:8-147:24 (saw others

25  perform work OTC); Brown Depo. at 144:8-145:16 (didn't know OTC was a violation); De La Rosa

26  Depo. at 252:18-24 ("Q: During the time that you worked at the Tracy theater from 2008 to 2010, did

27  you ever ask – were you ever asked to perform any work after you had already clocked out? A: Yes. Q:

28  When did that happen? A: Um, a couple times during my closing shifts."); *id.* at 253:13-20 (when asked

how often OTC work occurred, "I'd probably say maybe 10 to 15 percent of the time"); De La Rosa Depo. at 254:6-11 (managers were aware of the OTC work); Amey Depo. at 184:21-185:11 (suffered from OTC work).

## III.   ARGUMENT

### A.   Cinemark May Not Block Basic Class Discovery While Simultaneously Moving for Preemptive Denial Of Class Certification

It is black letter law that prior to judicial decision on a Rule 23 motion, the parties are entitled to conduct discovery in order to provide the court with evidence outside the pleadings that support (or refute) certification. *See Vinole v. Countrywide Home Loans*, 571 F.3d 935, 941 (9th Cir. 2009) ("The 'better and more advisable practice' for a district court is to give the litigants an opportunity to present evidence regarding whether a class action is maintainable") (citation omitted); *Kamm v. Cal. City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975) ("The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses"); *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) ("in most cases a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action").

Here, Cinemark continues to refuse to provide basic class discovery to which Plaintiff is entitled. After removal and transfer of the action to this Court, discovery commenced under the federal rules.[2]  On March 28, 2014, Plaintiffs served Cinemark with interrogatories and document requests.  Karas Decl., Exh. D.  Among the requested information was a list of class members and their contact information. Such discovery is routinely held to be proper in class actions because class members are percipient witnesses to the illegal practices alleged in the complaint.  *See*, *e.g.*, *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("The disclosure of names, addresses, and telephone numbers [of class members] is a common practice in the class action context."); *Kress v. Price Waterhouse Coopers,* 2011 U.S. Dist. LEXIS 87845 (E.D. Cal. Aug. 8, 2011) (same); *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 373 (2007) (in class actions, "[c]ontact information regarding the identity of

---

[2] The Court held a Case Management Conference on May 20, 2014 at which it set September 25, 2014 as the due date for Plaintiffs to file their motion for class certification.

potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case"). Plaintiffs also requested time and wage records of class members, because this information would show the frequency with which class members' breaks were taken late, were interrupted and/or were not taken at all.

On May 8, 2014, Cinemark objected to these discovery requests and refused to produce the requested information. *Id.*, Exh. E. On June 17, 2014, Plaintiffs sent a detailed meet and confer letter. *Id.*, Exh. F. On July 1, 2014, the parties participated in a telephonic meet and confer during which they discussed Cinemark's objections and Plaintiffs suggested the idea of production of a sampling of the requested records. *Id.*, ¶ 8. On July 23, 2014, in order to resolve the discovery dispute without having to resort to the Court's assistance, Plaintiffs proposed in an email that Cinemark produce a 33% sampling of the requested records. *Id.*, Exh. G.

On July 30, 2014, the parties participated in another telephonic meet and confer, purportedly to discuss Plaintiffs' sampling proposal. Karas Decl., ¶ 10. Unexpectedly, Cinemark's counsel flatly refused to produce even a sampling of the requested information and informed Plaintiffs' counsel that Cinemark would file a preemptive motion for denial of class certification, which it did minutes after the parties concluded their call. *Id.*, ¶ 11. Cinemark had not previously informed Plaintiffs that it was contemplating filing such a motion, let alone that it was preparing this motion while Plaintiffs were in good faith discussing an informal resolution of their discovery dispute. *Id.*, ¶ 12. On August 8, 2014, Plaintiffs served Cinemark with their portion of the joint statement regarding Plaintiffs' motion to compel. The parties plan to present the Court with the joint statement on August 13, 2014.

During the July 30, 2014 call, Plaintiffs' counsel met and conferred with Cinemark's counsel to try to identify a mutually-convenient date for the deposition of Cinemark's Rule 30(b)(6) witness, in compliance with Local Rule 30-1 and in order to avoid scheduling a deposition for a date that could be inconvenient for the witness, Cinemark, or its counsel. Karas Decl, ¶ 13.[3] Plaintiffs' counsel even provided Cinemark with a list of topics of testimony that would be included in the Rule 30(b)(6) deposition notice. *Id.*, Exh. H. On August 4, 2014, Cinemark's counsel offered three dates for

---

[3] Cinemark's failure to produce complete employee handbooks and its delays in responding to Plaintiffs' sampling proposal forced Plaintiffs to delay serving a Rule 30(b)(6) notice because Plaintiffs need to depose Cinemark's corporate representative on these documents.

deposition: one six days *after* the Court is scheduled to hear Cinemark's motion for denial of class certification (September 9, 2014), one *on the date that Plaintiff's motion for class certification is currently due* (September 25, 2014), one on *the day after the motion is due* (September 26, 2014). *Id.*, Exh. I.

Under settled law, Plaintiffs are entitled to interview class members, who are indisputably percipient witnesses to Cinemark's alleged illegal practices. This is especially important because such interviews are the only means to level the playing field because Cinemark's counsel by definition have the contact information, and thus exclusive access to these witnesses. *Campbell v. Wood,* 18 F.3d 662, 723 (9th Cir. 1994) ("We ordinarily understand that the truth is most readily uncovered when each party has equal access to the evidence"). Plaintiffs are also entitled to examine the time and wage records of the class members to rebut Cinemark's bare contention that it provides meal and rest periods in compliance with California law. Indeed, this information will assist Plaintiffs in confirming Cinemark's pattern and practice of denying meal and rest breaks to employees during the class period without paying premiums for those interrupted, missed or late breaks. Plaintiffs are also entitled to cross-examine Cinemark's corporate designee, and to conduct this deposition early enough to be able to incorporate this testimony in their motion for class certification. In sum, Plaintiffs are entitled to conduct basic class discovery before the Court rules upon a Rule 23 motion. Cinemark , however, has prevented Plaintiffs from presenting the Court with all relevant information.

The Court should not rule on an incomplete record. Cinemark does not cite any authority permitting a preemptive denial of certification before Plaintiffs had an opportunity to conduct class discovery.[4] Although the Ninth Circuit has held that motions to deny certification may be appropriate (*Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935 (9th Cir. 2009)), that case involved a motion to deny certification filed a mere three weeks before the discovery cut-off and the plaintiffs conceded that they "did not intend to propound any additional discovery seeking information from [the defendant] regarding the propriety of class certification." *Id*., at 943. The Ninth Circuit explained "Plaintiffs' real

---

[4] In fact, the cases that Cinemark cites were generally decided after exhaustive class discovery. In the outlier *Ryan v. Jersey Mike's Franchise Sys*., 2014 U.S. Dist. LEXIS 42677 (S.D. Cal. Mar. 27, 2014), the court denied class certification because the plaintiff's testimony affirmatively showed that he was not a member of the class that he sought to represent and could not state a credible theory of liability. Cinemark does not – and cannot – claim that is the case here.

1   complaint is *not that they were deprived of adequate time in which to complete discovery* but that they

2   'didn't want to be on defendants' schedule.'" *Id.* (emphasis added).

3          That is plainly not the case here: Plaintiffs have not completed discovery and the Court should

4   either deny the Motion on that ground or continue the hearing date for the Motion to permit Plaintiffs to

5   complete discovery.  The remaining discovery is vital to establishing Plaintiffs' class claims.  For

6   instance, timekeeping records are likely to show that most class members missed meal periods during

7   weekends and major holidays, when the theaters were most busy and most understaffed.  Cross-checking

8   timekeeping records with a schedule of major movie premieres is also likely to reveal that most class

9   members missed meal period on such days.  Similarly, depositions of corporate witnesses might reveal

10  that Cinemark resolved to understaff certain shifts so that employees cannot take meal or rest periods in

11  order to reduce labor costs. At this stage, the Court cannot determine where there is substantial evidence

12  supporting (or rebutting) certification because Cinemark has refused to disclose key documents and

13  information absent court intervention, which Plaintiffs are seeking.

14          **B.      Cinemark Has Failed to Demonstrate That Plaintiffs are Unable to Satisfy the**

15                    **Requirements for Class Certification**

16                    **1.      The Commonality Standard**

17          The commonality requirement of Rule 23(a) is readily satisfied where a lawsuit "challenges a

18  system-wide practice or policy that affects all the putative class members." *Armstrong v. Davis*, 275

19  F.3d 849, 868 (9th Cir. 2001).  Plaintiffs need not show, however, that "every question in the case, or

20  even a preponderance of questions, is capable of class wide resolution. So long as there is 'even a single

21  common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."

22  *Parsons v. Ryan*, 754 F.3d 657, *43 (9th Cir. 2014) (citation omitted); *see also Mazza v. Am. Honda*

23  *Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (noting that "commonality only requires a single

24  significant question of law or fact"). "Where the circumstances of each particular class member vary but

25  retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Evon v.*

26  *Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quotation marks and citation

27  omitted).

28          State and federal law alike require that "questions of law or fact common to class members

OPPOSITION TO MOTION TO DENY CERTIFICATION

1   predominate over any questions affecting only individual members." Rule 23 (b)(3); *see also Collins v.*

2   *Rocha*, 7 Cal. 3d 232, 238 (1972); *Newell v. State Farm General Ins. Co.*, 118 Cal. App. 4th 1094, 1101

3   (2004). Predominance is determined not by counting the number of common issues, but by weighing

4   their significance. *Mullen v Treasure Chest Casino, LLC*, 186 F.3d 620, 626-27 (5th Cir. 1999).

5   Predominance of common issues of law or fact does not require that the common issues be dispositive of

6   the entire controversy or even that they be dispositive of liability issues. 2 *Newberg* § 4:25 at 169.

7   "Predominance is a comparative concept and 'the necessity for class members to individually establish

8   eligibility and damages does not mean individual fact questions predominate.'" *Sav-On Drug Stores,*

9   *Inc. v. Superior Court*, 34 Cal. 4th 319 (2004) (internal citation omitted).

10         Here, the overriding common questions to be answered contain both the predominant legal and

11   factual issue (whether Cinemark's understaffing policies and practices caused a failure to provide meal

12   and rest periods and failure to pay wages, including overtime and reporting time pay and whether

13   Cinemark's reporting time policies and practices led to unpaid wages). This inquiry is amenable to class

14   treatment and Cinemark's Motion fails to prove otherwise. *See generally Jaimez v. DAIOHS USA, Inc.*,

15   181 Cal. App. 4th 1286, 1301 (2010).

16                    **2.      Cinemark Has Failed to Demonstrate That Plaintiffs Cannot Satisfy**

17                           **Certification Requirements as to the Meal and Rest Period Claims**

18                           **(a)      Common Policies and Practices**

19         Cinemark bemoans a host of purported differences between its theaters but offers no explanation

20   as to why these so-called "individual circumstances" are relevant to commonality when considering

21   *Plaintiffs' theory of recovery*.

22         The evidence has already revealed a wealth of commonality. Cinemark admits that the exact

23   same policies and practices, regarding meal and rest breaks (*see* Motion at 12:20-21 and 4:11-5:20), off-

24   the-clock work (*see id*. at 5:21-6:18), and reporting pay (*see id*. at 6:19-24 and 16:26-17:7), applied to all

25   Class Members. All Plaintiffs testified that Cinemark frequently understaffs its theaters. *See* Brown

26   Depo. at 96:4-97:11, 138:5-25; De La Rosa Depo. at 83:20-23; Amey Depo. at 65:22-66:25, 70:18-

27   71:19, 131:14-19. All Plaintiffs testified to the policy and practice that Class Members report to

28   managers before taking breaks. *See* Brown Depo. at 69:7-25, 134:15-23; De La Rosa Depo. at 79:14-20;

1    Amey Depo. at 78:11-79:12, 84:25-87:1, 206:19-208:8.  All employees suffered from interrupted breaks.

2    *See* De La Rosa Depo. at 116:8-123:25; Brown Depo. at 154:11-155:21; Amey Depo. at 182:8-183:23.

3    All employees reported working off-the-clock.  *See* Brown Depo. at 137:8-138:25, 144:8-145:16,

4    146:22-147:24; De La Rosa Depo. at 252:18-24, 253:13-20, 254:6-11; Amey Depo. at 184:21-185:11.

5         Cinemark also argues that non-exempt employees missed breaks for many reasons which would

6    necessarily require the Court to preside over individual mini-trials. Motion at 9:11-25.  Specifically,

7    Cinemark argues that for each non-exempt employees' missed rest break, the Court would have to

8    determine whether Cinemark required the non-exempt employee to miss a meal or rest break, or whether

9    the non-exempt employee did so for lawful reasons.  Motion at 9:24-25.  Again, Cinemark fails to

10   consider Plaintiffs' limited theory of recovery.  Plaintiffs only allege that Cinemark is liable as a result of

11   its uniform policy and practice of understaffing.  The fact that non-exempt employees may have varying

12   amounts of damages is not relevant at the certification stage, discussed below in section II(B)(2)(c).

13                **(b)      Subclasses Can Accommodate Variations, If Necessary**

14        Cinemark's Motion takes the blunt—and erroneous—position that Plaintiffs must certify all

15   claims and all positions as a single class or else fail to certify anything.  As this Court and Cinemark

16   know, large classes such as this putative class which includes more than 10,000 members, are often

17   divided into subclasses.  *See, e.g., Josue Soto, et al. v. Diakon Logistics (Delaware), Inc.*, 2013 U.S. Dist.

18   LEXIS 119028 (N.D. Cal. Aug 2013) (granting third motion for class certification after subclasses were

19   created); *Seckler v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 29940 (C.D. Cal. March 5, 2013)

20   (certifying overtime, regular rate, meal waiver, and wage statement subclasses). Thus, the relevant

21   question is not whether every single employee experienced the same violations for the same reasons, as

22   Cinemark suggests.  Rather, the relevant question at this stage is whether Plaintiffs could certify a class

23   or classes/subclasses. At this stage, it is unclear exactly what class members will report regarding each of

24   the many positions because Cinemark has refused to produce contact information for these percipient

25   witnesses.  Plaintiffs, however, have the option of moving to certify subclasses, such as an Assistant

26   Manager subclass, and multiple subclasses of non-management positions such as an usher subclass.

27        Some variation in duties and resulting violations is not surprising given the diverse job functions.

28   A subclass might be built around job functions for which the employee must wait for coverage before

1    leaving to take a break.  *See* De La Rosa Depo. at 86:4-8. (concessions employees must wait for another

2    employee to cover breaks), 141:13-21 (as a podium usher, you cannot leave the podium, even to use the

3    restroom), 224:21-25 ("When it came to the podium it was a little bit more difficult because it wasn't like

4    we had seven, eight ushers like we did back in '98 and '99. You know, now it was literally, you know,

5    two, three, four, if we were lucky.").  Job functions like projectionist might be excluded or otherwise

6    subclassed.  *See* Amey Depo. at 192:18-193:3 (theater went digital around 2008 or 2009, making

7    projectionist job more automated and less time-consuming); De La Rosa Depo. at 89:15-90:2

8    (projectionists usually take breaks between movies while ushers take breaks during movies), 90:22-91:2

9    (breaks were easier as a projectionist). Similarly, Plaintiffs might seek to certify a subclass of rovers and

10   projectionists because neither job requires another employee to help cover.  *See* De La Rosa Depo. at

11   222:2-12 ("[as a rover] It was a little bit easier for me to know when to take my lunch and be able to do

12   it").

13           Finally, a management-level subclass might be created if class members report that the types of

14   violations, or the causes of violations, experienced by Assistant Managers differ from other employees.

15   For instance, Plaintiffs testified that managers often covered for other employees so they could take

16   breaks.  *See* De La Rosa Depo. at 68:2-12 (managers cover for people during breaks), 82:11-23, 86:11-

17   20 (managers covered during busier times).  Thus, understaffing would be the cause of each employees'

18   break violations but for slightly different reasons for an Assistant Manager who must cover others'

19   breaks than it would be for a concessions worker.

20                    **(c)        Damages and Liability Are Not Relevant At This Stage**

21           Cinemark's arguments claiming that its meal and rest period policies are lawful are inappropriate

22   at the class certification stage.  The Ninth Circuit recently made clear that courts should not evaluate the

23   merits at the certification stage.  *See Stockwell v. City and County of San Francisco*, N.D. Cal. Case

24   No.12-15070, D.C. No. 4:08-cv-05180-PJH (9th Cir. Apr. 24, 2014) ("We conclude that the district

25   court erred in denying class certification because of its legal error of evaluating merits questions, rather

26   than focusing on whether the questions presented, whether meritorious or not, were common to the

27   members of the putative class").

28           Even if this Court eventually needs to determine individual damages issues (which would occur

1    only if Plaintiffs prevailed on liability), such determinations would not negatively impact the efficiency

2    of certification since the Court can use an array of available common tools to award them.[5]  The need to

3    determine individual damages (which is present in all class actions) does nothing to limit the utility of

4    adjudicating the overarching liability question – *i.e.* the lawfulness of Cinemark's understaffing policy

5    and practice and customer service policies – for all class members in one proceeding. As explained

6    above, this question can be answered once for all non-exempt employees because the answer is not

7    dependent on what any particular non-exempt employee did, but on what *Cinemark* did, as it was

8    *Cinemark* that chose whether to provide sufficient staff so that employees receive breaks. Because

9    Cinemark has failed to disprove that common questions of law and fact predominate, its Motion should

10   not be granted.

11   **3.    Cinemark Has Failed to Demonstrate That Plaintiffs Cannot Satisfy**

12   **Certification Requirements as to the Reporting Time Pay Claims**

13           Cinemark concedes that it had a practice of sending employees home before they had an

14   opportunity to work at least half of their scheduled shift.  Motion at 17:17-19.  Cinemark also does not

15   dispute that employees subject to this practice were illegally denied reporting time pay, as required by

16   IWC Wage Order No. 10-2001 subd 5(A).  Cinemark also does not dispute that Plaintiff Brown, who is

17   the class representative on this claim for failure to provide reporting time pay, was subject to its illegal

18   policy.  These facts alone establish that the Court should not pre-emptively deny class certification.

19           Cinemark seeks to downplay its class-wide violations of the reporting time law by arguing that

20   employees' experiences with respect to being sent home before completing at least half of their shift

21   differed because some employees may have left early due to personal emergencies or by choice.  This is

---

22           [5]  Again, individual issues requiring that each class member individually establish his/her
23   eligibility to make a claim for their specific damages do ***not*** render class treatment inappropriate as long
     as these issues may be effectively managed.  *Sav-On*, 34 Cal.4th at 334-335.  In any event, individual
24   damages can be determined through well-established, efficient and easily-managed procedures,
     including, for example, the use of questionnaires, surveys or representative sampling and testimony.  *See*,
25   *e.g.*, *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 750 (2004).  Not only do individual issues
     regarding each class member's specific amount of damages not render class treatment inappropriate, the
26   correct formula for determining wages due presents yet another class-wide issue for determination. Such
     formulaic approaches have been found particularly useful where, as here, defendant's lack of records
27   would make reconstructing the precise number of rest breaks missed a cumbersome process. *See*, *e.g.*,
     *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir. 1976); *EEOC v. O & G Spring & Wire Forms*
28   *Spec. Co.*, 38 F.3d 872, 876 (7th Cir. 1994); *Hilao v. Estate of Marcos*, 103 F.3d 767, 782-87 (9th Cir.
     1996); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1444-45 (9th Cir. 1984).

OPPOSITION TO MOTION TO DENY CERTIFICATION

CV 13-04030 WHO

a red herring. Plaintiffs' theory of liability is not that every employee who completed less than half of his or her scheduled shift is entitled to reporting time pay. Instead, every employee who was asked by a manager to leave early is entitled to such relief. Cinemark concedes that "[i]f the theatre was slow, the manager would ... ask for volunteers to leave early, and . . . *if there were no volunteers, . . . employees [would] be sent home.*" Motion at 17:17-19 (emphasis added). Cinemark also does not dispute that employees that were required to leave before completing half of their shift, including Plaintiff Brown, were denied reporting time pay. This amounts to a concession of an illegal class-wide policy, which renders the reporting time claim eminently suitable for class certification.

Cinemark claims that individual inquiries are necessary to determine the reason an employee left before completing at least a half of his or her shift. But what matters at class certification is not Cinemark's liability to any individual employee, but rather the legality of Cinemark's admitted policy of sending employees home early without providing reporting time pay. Whether this policy is legal is a common class-wide issue and class certification would enable the Court to "resolve [this] issue that is central to the validity of each one of the [individual] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Whether any individual class member is entitled to recovery stemming from this illegal policy is a question of damages, not liability, which does not defeat certification. *Leyva v. Medline Indus., Inc.*, 716 F. 3d 510, 513-14 (9th Cir. 2013); *see also Gripenstraw v. Blazin' Wings, Inc.*, 2013 U.S. Dist. LEXIS 179214, **21-23 (E.D. Cal. Dec. 19, 2013) (even when "wide divergence on the question of damage calculations for proposed class members" is expected, that divergence does not defeat a finding of predominance under Rule 23(b)(3)); *Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1044 (2012) (instructing that classes "will be certified even if the members must individually prove their damages"). Accordingly, the purported individual inquiries that Cinemark emphasizes are fully consistent with class treatment of the common issue of Cinemark's liability for its illegal reporting time policy.[6]

---

[6] Cinemark does not dispute that members of the reporting time subclass may be easily identified by a review of Cinemark's time records because these records would show which employees clocked out before completing at least one half of their scheduled shift.

1    **4.    Cinemark Has Failed to Demonstrate That Plaintiffs Cannot Satisfy**

2    **Certification Requirements as to the Off-the-Clock Claims**

3        Cinemark's argument that the off-the-clock claim is uncertifiable fails for several independent

4    reasons.

5        Cinemark first claims that its liability depends on whether Plaintiffs' managers knew or should

6    have known that Plaintiffs were working off-the-clock.  This merits issue need not be addressed upon a

7    procedural motion for class certification (or preemptive denial thereof).  As Cinemark's own authority

8    recognizes, "the Court's review of the merits is limited to those aspects relevant to making the

9    certification decision on an informed basis." *Collins v. ITT Educ. Servs.*, 2013 U.S. Dist. LEXIS

10   183410, *6 (S.D. Cal. July 29, 2013); *see also Arredondo v. Delano Farms Co.*, 2014 U.S. Dist. LEXIS

11   22658, *27 (E.D. Cal. Feb. 21, 2014) ("At the class certification stage, 'the court makes no findings of

12   fact and announces no ultimate conclusions on Plaintiffs' claims'").

13       In any event, Cinemark concedes that its managers asked Plaintiffs Brown and De La Rosa to

14   work off-the-clock.  *See* Motion at 18:7-8 ("Brown and De La Rosa admitted that . . . certain managers

15   asked them to work off the clock"), 18:24-25 (acknowledging Plaintiffs' testimony that managers

16   required them to work off the clock).  There is, therefore, ample evidence that Cinemark's managers

17   knew, or at the very least should have known, that employees were performing work without pay.

18       Cinemark also claims that Plaintiffs cannot identify the dates they worked off-the-clock and have

19   not produced documents supporting their claims.  Cinemark conspicuously ignores the fact that off-the-

20   clock work *by definition* would not be memorialized in Cinemark's time records.  Cinemark also holds

21   Plaintiffs and other class members to an artificially high burden of proof.  For the purposes of damages

22   analysis the specific dates on which employees worked off-the-clock is irrelevant.  What matters is the

23   frequency and during of off-the-clock work.  Plaintiffs may properly establish off-the-clock damages by

24   utilizing "numerous efficient means to resolve such issues, including questionnaires, surveys,

25   representative testimony, and other aggregate analysis." *Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist.

26   LEXIS 64224, *32 (N.D. Cal. 2007) (citing *Whiteway v. Fedex Kinko's Office and Print Servs., Inc.*,

27   2006 U.S. Dist. LEXIS 69193, at *29-*30 (N.D. Cal. Sept. 27, 2006); *see also Alvarez v. IBP, Inc*., 339

28   F.3d 894, 900 (9th Cir. 2003) (affirming the use of approximations of unpaid compensable time to award

1   damages in a wage and hour action); *Sullivan v. Kelly Servs*., 268 F.R.D. 356, 365 (N.D. Cal. 2010) (the

2   "use [of] statistical evidence, including surveys or representative testimony, or both, of class members . .

3   . is commonly accepted by courts for calculating damages in large class actions") (citations omitted);

4   *Arredondo*, 2014 U.S. Dist. LEXIS 22658, *170  ("[t]he Ninth Circuit itself has . . . suggested that use of

5   questionnaires to effectively and efficiently identify and manage class litigation is permissible")

6   (citations omitted); *Brinker*, 53 Cal. 4th at 1053 (Werdegar J., concurring) ("Representative testimony,

7   surveys, and statistical analysis all are available as tools to render manageable determinations of the

8   extent of liability") (citations omitted).

9           Further, how often and how long class members worked off-the-clock is a damages issue, and it

10  is black letter law that class certification is proper even if it leaves individual damages issues to be

11  resolved after a finding of class-wide liability.  NEWBERG ON CLASS ACTIONS § 4:26, p. 220 (4th

12  ed. 2003) ("individual proof of damages will not preclude a finding of predominance").[7]

13          Cinemark's sole case authority is inapposite.  In *Collins v. ITT Educ. Serv. Inc. Co*., the

14  defendant promulgated a formal written policy to its managers strictly prohibiting them from asking

15  employees to work off-the-clock.  *Id*., at *10 ("In connection with the revised policy, the managers were

16  admonished: "This is why [it] is very important to consistently discipline those non-exempt employees

17  who violate the Company's restriction on working unauthorized overtime.""")  Cinemark has not cited to

18  any such policy in its Motion.  It is well settled the absence of such a policy that renders liability suitable

19  for determination on a classwide basis.  As the California Court of Appeal explained in *Bradley v.

20  Networkers Internat., LLC*, 211 Cal. App. 4th 1129, 1150 (2012): There is no "material distinction"

21  between challenging the lawfulness of an express policy and the lack of an express policy.  *Id.*  Where

22  the plaintiff's theory of liability is that "the employer engaged in uniform companywide conduct that

23  allegedly violated the law," whether that conduct is the result of an express policy or the lack of one, it is

24  a matter of common proof.  *Id.* (citing *Brinker*, 53 Cal. 4th at 1025, 1033).  In *Bradley*, a class of field

25  _____

26          [7] Cinemark also notes that Plaintiffs did not report off-the-clock to their supervisors.  The
    argument is a non-sequitur because Plaintiffs testified that it was their supervisors that requested them to
    work off-the-clock in the first place.  It is not clear what effect the reporting of the supervisors' own
27  actions to those same supervisors would have accomplished.  More importantly, Cinemark does not and
    cannot cite any case where class certification was denied simply because the plaintiff failed to report the
28  illegal conduct to the company engaged in such conduct.  Instead, the class certification inquiry is
    bounded by the requirements of Rule 23.

1   technicians challenged the fact that the defendant "did not have a policy permitting or authorizing meal

2   or rest breaks." *Id.*  The appellate court held that "the lack of a meal/rest break policy and the uniform

3   failure to authorize such breaks are matters of common proof." *Id.  See also Faulkinbury v. Boyd &*

4   *Assocs., Inc.*, 216 Cal. App. 4th 220, 236-37 (2013) (predominant common question was "the lawfulness

5   of [Defendant] Boyd's lack of a rest break policy and requirement [that] all security guard employees

6   remain at their posts.")

7          Moreover, in *Collins*, the plaintiffs had a full opportunity to conduct class discovery.  In stark

8   contrast, here, Cinemark has obstructed class discovery while concurrently filing a preemptive motion to

9   deny certification.  Further, the defendant in *Collins* "submitted numerous declarations from putative

10   class members and other representatives, showing their respective experiences with overtime differed."

11   Cinemark makes no such showing here, even though it presently has exclusive access to the class

12   members.  And even if Cinemark had submitted class member declarations, it would be improper for the

13   Court to consider them because Cinemark is denying Plaintiffs' access to these important percipient

14   witnesses. [8]

15          Finally, Cinemark also ignores the fact that courts routinely certify off-the-clock class claims.

16   *See*, *e.g*., *Jimenez v. Allstate Ins. Co*., 2012 U.S. Dist. LEXIS 65328, *58 (C.D. Cal. Apr. 18, 2012)

17   ("Defendant is correct that overtime claims may present a number of individualized questions, including

18   whether individual employees worked off-the-clock.  Nonetheless, courts have certified classes and

19   allowed collective actions to proceed notwithstanding such circumstances.") (citations omitted); *Ross v.*

20   *US Bank Nat'l Ass'n*, 2009 U.S. Dist. LEXIS 116875, *20 (N.D. Cal. Nov. 25, 2009) (certifying an off-

21   the-clock claim); *cf. Rojas v. Marko Zaninovich, Inc*., 2013 U.S. Dist. LEXIS 46212, *16 (E.D. Cal.

22   Mar. 28, 2013) (rejecting the defendant's request to reconsider certification of an off-the-clock claim in

23   light of *Brinker*).  Each of these cases presented the purportedly insuperable barriers to certification cited

24   by Cinemark (*i.e*., inconsistent enforcement of off-the-clock policies and individual damages

25   calculations), yet the courts easily rejected such arguments. [9]

26

27   _____

[8] It is also notable that *Collins* rejected an identical argument that Cinemark makes here.  *Id*., at

28   *17 n. 7 ("the reason why an employee worked unpaid overtime is immaterial and does not raise
individualized issues.") (citation omitted)

[9] Cinemark contends that Plaintiffs' derivative claims are not certifiable because the underlying

### C.     A Class Action Is Plainly Superior To Thousands of Individual Actions

"'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Sullivan v. Kelly Services, Inc.*, No. C 08-3893, 2010 U.S. Dist. LEXIS 50623 (N.D. Cal. April 27, 2010), *citing Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).  Courts have found class treatment superior and have certified class actions particularly when the employer's policies affect a large number of workers.  *See, e.g., Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated").

Here, over 10,000 employees will never have their day in court absent a class action.  There is no evidence that class members would have an interest in individual control of their cases.  Further, because the class members' individual claims are relatively modest, and the filing fee and costs would typically exceed any potential recovery, there is not sufficient incentive for them to be brought as individual cases.  And what is more, absent class certification, Cinemark's employees will continue to be deprived of meal and rest breaks and reporting time pay and will continue to work off-the-clock.  *Linder v. Thrifty Oil Co*., 23 Cal.4th 429, 445-446 (2000) ("the role of the class action in deterring and addressing wrongdoing" is pertinent to determining whether a class action is superior); *accord Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (2001).[10]  Accordingly, class treatment is superior to alternatives.

### D.     The Typicality Requirement Is Satisfied

Representative claims are typical of the class "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiffs amply satisfy the typicality requirement.  All Plaintiffs worked for Cinemark as

---

claims may not be certified.  The reverse is, of course, also true.  Because, as explained above, the Court should not deny certification on the underlying wage and hour claims, the derivative claims are also certifiable.
[10] There are no pending actions that could conflict with this class action.  *See* Fed. R. Civ. P. 23(b)(3)(A).

OPPOSITION TO MOTION TO DENY CERTIFICATION

CV 13-04030 WHO

1    non-exempt hourly employees.  Brown Depo. at 48:17-21; De LaRosa Depo. at 96:22-97:1; Amey

2    Depo. at 46:11-16.  All Plaintiffs were subject to Cinemark's meal and rest break policies.  *See* Motion at

3    4:11-6:24; 12:20-21; and 16:26-17:7.  All Plaintiffs suffered meal and rest break violations.  Brown

4    Depo. at 72:20-73:5, 134:15-23, 154:11-16, 155:4-10; De LaRosa Depo. at 116:8-123:25; Amey Depo.

5    at 78:11-79:12, 84:25-86:8, 182:8-183:23, 131:14-19.  Further, all Plaintiffs have had to work off-the-

6    clock without being paid for such time.  Brown Depo. at 137:8-138:25, 144:8-145:16, 146:22-147:24;

7    De LaRosa Depo. at 252:18-24, 253:13-20, 254:6-11, 116:11-25, 119:15-120:14; Amey Depo. at 182:8-

8    183:23, 184:21-185:11.  Finally, Brown has testified that she did not receive reporting time pay when she

9    was sent home after working less than half of her scheduled shift.  Brown Depo. at 167:22-168:13. These

10   are the same illegal policies and practices challenged by this lawsuit.  Thus, Cinemark's argument that

11   Plaintiffs are not typical of the absent class members lacks merit.

12        In any event, Cinemark's typicality attack is disingenuous because *concurrently with its motion*

13   *to deny certification*, Cinemark is obstructing Plaintiffs' class discovery efforts.  Thus, Cinemark is

14   simultaneously arguing that Plaintiffs are not typical and blocking Plaintiffs' discovery efforts that would

15   establish typicality.  Cinemark may not have it both ways.

16        **E.      Defendant's Adequacy Attack Is Baseless**

17                 **1.      Amey Is Adequate to Represent the Class**

18        Cinemark argues that Plaintiff Amey is inadequate because he had some supervisory

19   responsibilities over other class members, but this purported conflict is illusory.  Here, all Plaintiffs were

20   subject the same policies and practices, as discussed above.  Plaintiffs are not claiming that individual

21   managers or assistant managers developed the violative wage and hour policies; it was Cinemark that did

22   so. Defendant does not claim that Plaintiff Amey created a single policy.  The fact that individual

23   managers were tasked with *implementing* these policies does not create a conflict with the class members

24   they supervised.  Indeed, Plaintiff Amey testified that the managers themselves were and are subject to

25   the same policies and practices challenged by this lawsuit (*see* Amey Depo. at 55:4-56:8 and 188:5-

26   189:5), which is all Courts require to certify a class. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959

27   (9th Cir. 2003) ("Plaintiffs attempting representation of nonsupervisory employees by supervisory

28   employees … must offer evidence of coextensive interests or at least allege the existence of a general

1   discriminatory policy"); *Collins v. ITT Educ. Servs.*, 2013 U.S. Dist. LEXIS 183410, at *33 (S.D. Cal.

2   July 29, 2013) ("where, as here, the Plaintiffs' theory is that Defendant's policies, not the ... managers,

3   are at fault, there is no conflict of interest if the class includes the managers") (internal citation omitted);

4   *In re Autozone, Inc.*, 289 F.R.D. 526, 536 (N.D. Cal. 2012) (same).

5         Moreover, even if there were a potential conflict, this does not affect the adequacy of Plaintiff

6   Amey to represent a subclass of Assistant Managers, nor does it affect the undisputed adequacy of the

7   other two named plaintiffs.  Thus, the conflict still would not warrant denying certification of the case.

8   *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162

9   (9th Cir. 2001) ("adequacy-of-representation requirement is satisfied as long as one of the class

10   representatives is an adequate class representative").

11         Cinemark's authority is easily distinguishable.  For instance, in *Hughes v. WinCo Food*s, 2012

12   U.S. Dist. LEXIS 2469, *23 (C.D. Cal. Jan. 4, 2012), the plaintiffs alleged that supervisors "bore

13   significant responsibility" for wage and hour violations at issue.  By contrast, here the managers were

14   simply implementing Cinemark's policy of understaffing their theaters, which inevitably resulted in meal

15   and rest break violations and off-the-clock work.  In any case, even if the Court finds that the proposed

16   class is overbroad because it includes some employees with supervisory responsibilities (and it should

17   not), the solution is not to pre-emptively deny certification but to create subclasses.  *See Ortiz v.*

18   *Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (where there are intra-class conflicts, creation of subclasses

19   may be appropriate).

20         **2.**     **Cinemark's Claims Of Improper Solicitation Are Spurious**

21         Plaintiffs' counsel use of an investigator to identify and interview percipient witnesses to gather

22   additional evidence in support of Brown's claims before formally filing a lawsuit was both legal and

23   necessary under the law; the investigator's conversation with De La Rosa does not constitute improper

24   solicitation—indeed, it does not constitute solicitation at all.

25         **(a)**     **The Investigator Contacted Mr. De La Rosa To Investigate After**

26                       **Silken Brown Contacted Capstone**

27         Plaintiff Brown's last day of work was October 3, 2012.  She first contacted a Capstone attorney

28   several days later.  Brown Depo. at 31:19-23.  The original complaint in this action was filed on

OPPOSITION TO MOTION TO DENY CERTIFICATION

December 3, 2012, and Brown was the only named plaintiff. Doct. 1 ("Notice of Removal") at 2:7-14. The investigator called Plaintiff De La Rosa after Ms. Brown contacted Capstone, which was early October 2012 at the earliest. De La Rosa Depo. at 41:12-14. During that telephone call, De La Rosa told the investigator that he would like to be contacted by an attorney. *Id*. at 41:8-11, 45:14-16. On January 10, 2013, Plaintiffs filed a First Amended Complaint adding De La Rosa as a plaintiff. Notice of Removal at 2:16-19.

### (b) The Investigator's Call to De La Rosa Was Not Solicitation, Much Less Improper Solicitation, Under Rule 1-400.

Rule 1-400(B)(1) defines "solicitation" as any communication "[c]oncerning the availability for professional employment of a member or a law firm in which a significant motive is pecuniary gain" which is "delivered in person or by telephone." There is no evidence that the communication by the investigator concerned Capstone's availability for professional employment at all. *See* Rule 1-400(B)(1). De La Rosa does not recall the investigatory ever discussing with him Capstone's availability to represent him. Declaration of Mario De La Rosa, ¶ 4. Rather, De La Rosa testified to a true investigatory conversation. The investigator asked, in light of the nature of Brown's claims, about De La Rosa's experiences with wage and hour issues at Cinemark. De La Rosa Depo at 41:3-7. Indeed, he even told De La Rosa about Brown and her then-existing claim. *Id*., at 41:12-25.

Such investigations are not only permissible, they are required by Rule 11 and are often integral to satisfying the statutory requirements of a class action. In calling De La Rosa, the investigator was contacting a potential percipient witness. Employers routinely oppose not only class certification but class-wide discovery on the basis that the plaintiff cannot establish that her experiences were typical of those of employees at other locations the defendant maintained. *See* Motion at 20:10-15. Interviewing employees from other locations is often integral to rebutting this type of argument. Accordingly, there is no evidence that the phone call amounted to solicitation at all, much less improper solicitation.

### (c) Even If The Phone Call Had Been Solicitation—Which It Was Not—No Part Of That Phone Call Violated Rule 1-400

The Rules of Professional Conduct do not prohibit all solicitation by an attorney, only improper solicitation. Otherwise, the communication is constitutionally protected. Rule 1-400(C). The Standards

1    enumerated at the end of Rule 1-400 describe circumstances under which the communication is

2    presumed to violate Rule 1-400.

3            For instance, in *Rose v. State Bar of California*, 49 Cal. 3d 646 (1989) on which Cinemark relies,

4    the attorney went to the hospital rooms of two individuals who had just suffered serious injuries in a

5    helicopter crash, trying to convince them to retain him for the purpose of filing a lawsuit—one of these

6    individuals had just been told he might never walk again. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447

7    (1978) involved similar circumstances.  There, the attorney visited a prospective client, an 18-year old in

8    "the hospital, … lying in traction" after a car accident.  *Id.* at 450.  He also went to her parents' house,

9    where she lived, to discuss potential representation of the adult potential client with her parents,

10   surreptitiously recording the conversation with a tape recorder he had concealed under his raincoat.  *Id.*

11   He then had the potential client sign a retainer agreement while she was still in the hospital.  *Id.*  The

12   other client "was 18 years of age and not a high school graduate at the time, replied to appellant's query

13   about whether she was going to file a claim by stating that she really did not understand what was going

14   on."  *Id.*  Nonetheless, the attorney offered to represent her too and she assented.  *Id.*

15          These cases, with attorneys soliciting representation of people in their hospital rooms, and

16   soliciting representation of people who clearly demonstrate a lack of comprehension, are presumed to be

17   in violation of rule 1-400.  *See* Standards No. 4.  They smack of undue influence and pressure at a time

18   when and in a place where the prospective client is likely to be extremely vulnerable, both physically and

19   emotionally.  No such circumstances exist here.  De La Rosa Decl., ¶ 3, 5.  De La Rosa was not cornered

20   in a hospital room, he had not just been in an accident, there is no evidence of the investigator pressuring

21   De La Rosa into becoming involved in the lawsuit.  De La Rosa wanted to talk to a Capstone attorney

22   about his experiences working at Cinemark, and he told the investigator he wanted a lawyer to contact

23   him.  De La Rosa Decl. ¶ 3, 5.  He felt no pressure to do so.  *Id.*  De La Rosa does not recall the

24   investigator ever discussing Capstone's availability to represent him at all.  *Id.* ¶ 4.  There is no evidence

25   of any pressuring tactics by the investigator or any emotional or physical vulnerability on De La Rosa's

26   behalf.

27          The only two aspects of the investigator's phone call Cinemark suggests were improper were

28   not.  First, Cinemark protests that the investigator apparently told De La Rosa that there was a "claim,"

OPPOSITION TO MOTION TO DENY CERTIFICATION

CV 13-04030 WHO

1    implying this was untrue.  But when the investigator called De La Rosa, Brown had already contacted

2    Capstone, and Brown indeed did have a claim.  Therefore the investigator was correct.

3         Second, Cinemark suggests that the investigator did not tell De La Rosa how he got the latter's

4    contact information.  But that is not what De La Rosa said during his deposition—he testified that he did

5    not remember.  De La Rosa Depo. at 40:17-19, 42:13-43:1.  Accordingly, there is no merit to

6    Cinemark's claim that De La Rosa was improperly solicited.

7         **F.**      **Defendant's Attempt to Strike the Representative PAGA Claim Is Procedurally**

8                  **Improper and Without Merit**

9         Cinemark argues that Plaintiffs' representative PAGA claim should be dismissed because

10   Plaintiffs cannot satisfy Rule 23 and because the PAGA claims would be unmanageable.  As an initial

11   matter, Cinemark's argument is procedurally improper.  While the courts may consider motions to deny

12   class certification, there is no precedent for striking representative PAGA allegations upon such a

13   motion, especially where, *as here*, Plaintiffs are not seeking class certification of their PAGA claim.

14   How the *representative* PAGA claim will be tried is to be discussed at the pre-trial conference after the

15   completion of discovery, not upon a premature motion for denial of *class certification*.

16        Further, Cinemark's position has been repeatedly rejected by the vast majority of courts,

17   including within this District.  The Ninth Circuit recently held that because "Rule 23 and PAGA are

18   more dissimilar than alike [in that a] PAGA action is at heart a civil enforcement action filed on behalf of

19   and for the benefit of the state, not a claim for class relief" "'a PAGA suit is fundamentally different than

20   a class action.'"  *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123-24 (9th Cir. 2014) (emphasis

21   added).  Accordingly, even though the Ninth Circuit did not directly decide Rule 23's applicability,[11] the

22   most reasonable interpretation of *Baumann* is that Rule 23 does ***not*** apply to actions brought under

23   PAGA.  Because Cinemark derives the purported manageability requirement for PAGA actions from

24   Rule 23, the Court should deny the motion as contrary to the reasoning in *Baumann*.

25        Indeed, one district court already applied *Baumann* to hold that PAGA actions do not need to

26   satisfy Rule 23.  In *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137 JCS, 2014 U.S. Dist. LEXIS 42622

27

28        [11] *See id.*, at 1124 ("We do not today decide whether a federal court may allow a PAGA action
     otherwise within its original jurisdiction to proceed under Rule 23 as a class action.")

1    (N.D. Cal. March 28, 2014), the court concluded that "to the extent there has been disagreement among

2    the district courts on the question of whether Rule 23 applies to PAGA claims, *this issue has been*

3    *largely resolved by the Ninth Circuit's decision in Baumann*." *Id.* at *73 (emphasis added).

4    Accordingly, *Villalpando* held that "PAGA actions, though representative, need not be brought as class

5    actions under Rule 23." *Id.* at *74.

6        Even prior to *Baumann*, the vast majority of district courts held that PAGA actions do not need

7    to satisfy Rule 23.  *See Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013)

8    ("every court to reach the issue in this district, have found that representative PAGA claims need not be

9    certified under Rule 23 to proceed"); *Plaisted v. Dress Barn, Inc*., No. 2:12-cv-01679-ODW (SHx),

10   2012 U.S. Dist. LEXIS 135599 (C.D. Cal. Sept. 20, 2012) ("the majority of federal courts [have] held

11   that PAGA actions, though representative, need not be brought as class actions in which Rule 23's

12   requirements are necessarily applicable."); *McKenzie v. Fed. Exp. Corp*., 765 F. Supp. 2d 1222, 1234

13   (C.D. Cal. 2011) ("[T]he majority view—consistent with the California Supreme Court in *Arias*—is that

14   PAGA claims are not class actions. . ."); *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-

15   SKO, 2011 U.S. Dist. LEXIS 59377,  *12-13 (E.D. Cal. June 2, 2011) ("the majority view among the

16   district courts [is that] Rule 23 certification is not necessary to the extent PAGA actions are brought in a

17   non-class representative capacity"); *see also e.g.*, *Willner v. Manpower Inc.*, No. C 11-02846, 2012 U.S.

18   Dist. LEXIS 62227 at *26 (N.D. Cal. May 3, 2012); *Mendez v. Tween Brands, Inc*., No. 2:10-cv-00072-

19   MCE-DAD, 2010 U.S. Dist. LEXIS 66454, *10-11 (E.D. Cal. June 30, 2010); *Sample v. Big Lot Stores,*

20   *Inc.*, No. C 10-03276 SBA, 2010 U.S. Dist. LEXIS 131130, *3 (N.D. Cal. Nov. 30, 2010); *Cardenas v.*

21   *McLane Foodservice, Inc.*, No. SACV 10-473 DOC (FFMx), 2011 U.S. Dist. LEXIS 13126, *8-9 (C.D.

22   Cal. Jan. 31, 2011); *cf. Arias v. Superior Court*, 46 Cal. 4th 969, 980-86 (2009) (expressly rejecting the

23   application of class action requirements to a PAGA representative action).

24       With respect to Rule 23's manageability requirement specifically, *Plaisted* is directly on point.

25   In *Plaisted*, the defendant, just as Cinemark here, claimed that the court should dismiss a PAGA action

26   as unmanageable.  The court denied the motion because "[t]o hold that a PAGA action could not be

27   maintained because the individual assessments regarding whether a violation had occurred would make

28   the claim unmanageable at trial would obliterate [its] purpose, as every PAGA action in some way

1    requires some individualized assessment regarding whether a Labor Code violation has occurred." 2012

2    U.S. Dist. LEXIS 135599, at *9-10; *see also Henderson v. JP Morgan Chase Bank,* 2013 U.S. Dist.

3    LEXIS 185101, *19-20 (C.D. Cal. July 10, 2013) (denying defendant's motion to strike PAGA

4    allegations after class certification on the grounds that the class claims were unmanageable); *Echavez v.*

5    *Abercrombie & Fitch Co,* 2013 U.S. Dist. LEXIS 184971, *31 (C.D. Cal. Aug. 13, 2013) (denying

6    motion to strike PAGA allegations as unmanageable because the motion "amount[ed] to an argument

7    that the allegations should be stricken because Plaintiff may have a difficult time proving them at trial.")

8         Cinemark's principal authority in support of its manageability argument is *Ortiz v. CVS*

9    *Caremark Corp*., No. C-12-05859 EDL, 2014 U.S. Dist. LEXIS 36833 (N.D. Cal. Mar. 18, 2014) (N.D.

10   Cal. March 19, 2014).  *Ortiz* expressly recognized that PAGA actions are not governed by Rule 23.  *Id*.

11   at * 4-5.  Yet, *without citing any authority permitting it to do so*, the court proceeded to apply Rule

12   23(b)(3)'s  manageability analysis to the PAGA claims.  No other court has followed *Ortiz*'s imposition

13   of a manageability requirement onto PAGA actions.  Accordingly, *Ortiz* is, at best, an outlier decision.

14        In sum, as *Baumann* and the vast majority of district courts have recognized, class actions

15   brought under Rule 23 and PAGA actions are fundamentally dissimilar.  They serve different goals,

16   different remedial schemes, and different procedural requirements.  Cinemark's attempt to conflate Rule

17   23 and PAGA is unsupported by the weight of authority and is inconsistent with *Baumann*.

18   **IV.   CONCLUSION**

19        For the foregoing reasons, Plaintiffs respectfully request that the Court deny Cinemark's motion

20   in its entirety.

21   Dated: August 13, 2014                    Respectfully submitted,

22                                             Capstone Law APC

23

24                               By:  /s/ Stan Karas

25                                    Matthew Theriault
                                      Stan Karas
26                                    Katherine Kehr
                                      Jonathan Lee
27
                                      Attorneys for Plaintiffs Silken Brown and
28                                    Mario Del La Rosa

OPPOSITION TO MOTION TO DENY CERTIFICATION
                                                                    CV 13-04030 WHO