United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH AMEY, et al.,

          Plaintiffs,

    v.

CINEMARK USA INC, et al.,

          Defendants.

Case No. 13-cv-05669-WHO

**ORDER RE MOTION FOR CLASS CERTIFICATION, MOTION TO DENY CLASS CERTIFICATION, AND JUDGMENT ON THE PLEADINGS**

Re: Dkt. Nos. 82, 84, 95

Plaintiffs Joseph Amey, Silken Brown, and Mario De La Rosa seek to represent a proposed wage and hour class consisting of all non-exempt employees of defendants Cinemark USA Inc. and Century Theaters, Inc. ("Cinemark") because of alleged violations of the California Labor Code, the California Business and Professions Code, and the Private Attorneys General Act ("PAGA"). Plaintiffs claim that Cinemark's uniform policies regularly deprived employees of meal and rest breaks, failed to provide them with reporting time pay, forced them to work off-the-clock without pay, and failed to report the proper hours worked and hourly rates on their wage statements.

There are three major issues to resolve on plaintiffs' motion to grant, and Cinemark's motion to deny, class certification, and on Cinemark's motion for judgment on the pleadings. First, are there common questions of law presented in this case, and do they predominate over questions that only affect certain individual members of the class? Aside from possible claims concerning the wage statement, the answer is "No." Plaintiffs have not shown that there is a uniform policy or practice that would give rise to common questions under Federal Rule of Civil Procedure 23. The evidence indicates that Cinemark's written policies complied with all applicable employment laws, and that departures from these policies resulted from individual aberrations rather than from Cinemark's systematic practices. Plaintiffs' motion for class

certification is DENIED.

Second, should plaintiffs' PAGA claims be allowed to proceed?  Because the notice to Cinemark and the Labor and Workforce Development Agency on the wage statement claim failed to allege the facts and theories that support the wage and hour claim plaintiffs now want to pursue, that PAGA claim under section 226(a)(9) is DISMISSED because plaintiffs failed to exhaust administrative remedies.  So are the other PAGA claims because they are unmanageable in that numerous individualized assessments would be necessary to identify the aggrieved individuals from amongst the members plaintiffs seek to represent and determine who has been injured.

Third, may plaintiffs assert claims that were not pleaded under California Labor Code section 226 regarding a misstatement on the wage statements that failed to list the proper overtime rate?  Plaintiffs originally pleaded a derivative claim contending that Cinemark's failure to pay for meal and rest breaks and overtime caused the wage statement violation.  Shortly before filing their motion for certification, plaintiffs shifted their theory when they realized that Cinemark's wage statement contained the wrong rate for premium pay.  Cinemark did not properly receive notice of these claims.  Plaintiffs' "direct" wage statement claims for failure to properly list the overtime rate cannot be certified because they were pleaded as "derivative" claims relating to unrecorded hours worked off-the-clock, and never amended.

## BACKGROUND

I incorporate the facts set forth in my prior order denying Cinemark's motion to deny certification.  *See* Order at 1-3 (Dkt. No. 80).  Cinemark employs both salaried and non-salaried, or non-exempt, employees.  Smith Depo. 26:7-27:25 (Dkt. No. 100-19).  General managers, who are typically responsible for overall operations of each theater, are salaried, while all other employees, including theater managers, senior assistant managers, and assistant managers, are hourly.  *Id.*  The plaintiffs' proposed class consists of all non-exempt employees of Cinemark's California theaters since December 3, 2008.  Mot. Cert. 12 (Dkt. No. 84).  There are 10,000 members of the putative class who work at 63 theaters across California.  *Id.*

Plaintiff Amey is currently employed as an Assistant General Manager at the Greenback theater in Sacramento.  Amey Depo. at 43:5-13 (Dkt. No. 83-1).  He has worked for Cinemark

since 2003, and held positions in Concessions and the Box Office before he was promoted to Assistant Store Manager in 2005.  *Id.* at 44:20-45:3.  He has worked at four different theaters. Amey Decl. ¶ 2 (Dkt. No. 84-2).

Plaintiff Brown is a former employee who worked as a Concession Worker, Box Office Cashier, and Usher and performed some janitorial duties at the San Francisco-Westfield Mall theatre for seven months.  Brown Depo. 46:2-48:1 (Dkt. No. 83-9).  Plaintiff De La Rosa is a former employee who worked as a Projectionist, Rover, and in various Usher positions at the theatre in Tracy, California for one and one-half years.  De La Rosa Depo. 35:10-15, 64:10-21, 88:6-18 (Dkt. No. 83-12).

On December 3, 2012, Brown and De La Rosa filed a class action complaint against defendants Cinemark USA, Inc. and Century Theaters, Inc. in the Superior Court for San Francisco ("*Brown* Complaint").  After an amended complaint was filed in August 2013, the *Brown* Complaint was removed to this Court on August 29, 2013.  On July 25, 2013, plaintiff Amey filed a class action complaint against defendant Cinemark USA, Inc. in Los Angeles County ("*Amey* Complaint").  On August 26, 2013, the *Amey* Complaint was removed to the Central District of California, and subsequently transferred to the Northern District in December 2013.  The *Amey* and *Brown* cases were related and then consolidated by stipulation of the parties on March 17, 2014, with the *Amey* case designated as lead case.  Dkt. No. 50.

The *Amey* complaint alleges causes of action on behalf of "all non-exempt" employees of defendants for:  (i) failure to provide meal and rest periods (California Labor Code §§ 226.7, 512); (ii) unlawful failure to pay wages for all time worked (California Labor Code §§ 200-204, 510, 1194, and 1198); (iii) failure to provide accurate itemized wage statements (California Labor Code §§ 226, 1174); (iv) failure to pay wages upon termination (California Labor Code § 203); (v) Unfair Business Competition (California Business & Professions Code § 17200); and (vi) violation of the Private Attorneys General Act ("PAGA") (California Labor Code § 2699).  *See Amey* Compl. (Dkt. No. 1).  The same claims are asserted in the *Brown* Complaint on behalf of

concession workers and ushers.[1]  *See Brown* Compl. (Dkt. No. 43-2).

The class as pleaded between the *Amey* and *Brown* complaints covers 16 different job positions, including:  Bartender, Box Office, Concessions Worker, Cook, Janitor, Kitchen Support Worker, Maintenance Worker, Maintenance Supervisor, Restaurant Worker, Security, Server, Ushers, Ushers-B (Ushers with Booth experience, meaning they are trained to operate the theatre's projection equipment), and VIP Room Worker, as well as Senior Assistant Managers and Assistant Managers.  *See* Dkt. No. 71-8 at 5; Mot. Dismiss 3 (Dkt. No. 82).

On September 5, 2014, I denied Cinemark's motion to deny certification, stating that plaintiffs were entitled to class-wide discovery before I could determine whether certification was appropriate.  Order at 1-2.  At the same time, I expressed my concerns about the size and diversity of plaintiffs' proposed class.  *Id.* at 5.

After conducting discovery, plaintiffs sought certification of all Cinemark employees "who are and/or were employed as non-exempt employees in one or more of Defendants' California theaters since December 3, 2008."  Mot. Cert. 12.  At the same time, Cinemark brought a second motion to deny certification and to dismiss the plaintiffs' PAGA claims on the grounds that PAGA claims must meet – and in this case fail to meet – the requirements of Rule 23.  Mot. Dismiss 1-2. It also sought judgment on the pleadings with respect to plaintiffs' claim for failure to provide accurate itemized wage statements on the basis that it does not state a claim upon which relief can be granted and because plaintiffs failed to exhaust administrative remedies as required by PAGA. Mot. J. Pleadings 1-2 (Dkt. No. 95).  I heard oral argument on April 29, 2015.

## LEGAL STANDARD

## I.  MOTION FOR JUDGMENT ON THE PLEADINGS

"[J]udgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1112 (N.D. Cal. 2013).  A motion under Rule 12(c) for failure to state a claim is treated in the same way as a Rule 12(b)(6) motion.  *Id.*; *see also*

---

[1]  The *Brown* Complaint also asserts a violation for failure to pay minimum wages due under Labor Code §§ 1194, 1197, 1197.1.  *Brown* Compl. ¶¶ 62-72.

1  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). In resolving a motion for

2  judgment on the pleadings, the court may generally consider only the contents of the complaint,

3  and any documents upon which the complaint relies or that are attached to it. *Lopez*, 5 F. Supp. 3d

4  at 1113.

5        To satisfy the standard under Rule 12(b)(6), the trial court considers all allegations of

6  material fact to be true, and construes them in the light most favorable to the nonmoving party. *Id.*

7  It does not accept conclusory allegations of law or unreasonable inferences. *Id.* "To survive a

8  motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

9  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other

10  words, the plaintiff must include factual content that "allows the court to draw the reasonable

11  inference that the defendant is liable for the misconduct alleged." *Id.*

12  **II. MOTION FOR CLASS CERTIFICATION**

13        Before certifying a class under Rule 23, "the trial court must conduct a 'rigorous analysis'

14  to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza*

15  *v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). The burden is on the party seeking

16  certification to establish that Rule 23 is satisfied. *Id.*

17        Rule 23 calls for a two-step process. First, the moving party must show that: (i) the class

18  is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact

19  common to the class; (iii) the claims or defenses of the representative parties are typical of the

20  claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect

21  the interests of the class. Fed. R. Civ. P. 23(a). Next, one of the three requirements of Rule 23(b)

22  must be satisfied. Here, the plaintiffs move under Rule 23(b)(3), which provides that "the

23  questions of law or fact common to class members predominate over any questions affecting only

24  individual members, and that a class action is superior to other available methods for fairly and

25  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition, an "implied

26  prerequisite to certification" is that the class must be sufficiently ascertainable or definite.

27  *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 05-2320 SBA, 2006 WL 2642528,

28  at *3 (N.D. Cal. Sept. 14, 2006). "The Court must be able to determine class members without

United States District Court
Northern District of California

1   having to answer numerous fact-intensive questions." *Id.* (internal citations and quotations

2   omitted).

3          While the court must treat the substantive allegations in the class action pleadings as true,

4   it is also "at liberty to consider evidence which goes to the requirements of Rule 23 even though

5   the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*,

6   976 F.2d 497, 509 (9th Cir. 1992) (internal citations and quotations omitted).  The court may

7   consider supplemental evidence that is submitted by the parties.  *Bowerman v. Field Asset Servs.,*

8   *Inc.*, No. 13-CV-00057-WHO, 2015 WL 1321883, at *3 (N.D. Cal. Mar. 24, 2015).

9                                      **DISCUSSION**

10  **I.  PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

11         Before addressing the merits of plaintiffs' motion, I must explain my rulings on

12  Cinemark's objections to plaintiff's evidence.

13       **A.  The Evidentiary Objections**

14            **1.  Dr. Fountain**

15         Federal Rule of Evidence 702 governs the admission of expert testimony.  An expert may

16  provide testimony that is helpful to the trier of fact if (i) it is based on sufficient facts or data; (ii) it

17  is the product of reliable principles and methods; and (iii) the expert has reliably applied these

18  principles and methods to the facts of the case.  FED. R. EVID. 702; *see also York v. Starbucks*

19  *Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *11 (C.D. Cal. Nov. 23, 2011).  In

20  addition, the expert's specialized knowledge must assist the trier of fact in understanding the

21  evidence.  FED. R. EVID. 702**.**

22         Cinemark objects to plaintiffs' statistical expert, Dr. Fountain, as unreliable because his

23  calculations are based upon data that reflected employees' scheduled shifts instead of the "punch

24  data" which reflected the hours actually worked by employees.  Oppo. Mot. Cert. 16 (Dkt. No.

25  98).  They request that I strike his evidence, relying in part on *York v. Starbucks Corp. Id.* at 17.

26  In *York*, the court struck similar evidence from the same expert, Dr. Fountain, because it was

27  unreliable.  2011 WL 8199987, at *16.  However, in that case Dr. Fountain admitted that "he

28  knew nothing about the process for determining the final pay dates, and that these dates might

                                            6

United States District Court
Northern District of California

1    have been erroneous." *Id.* at *14. He made no such admission in this case. Importantly,

2    Cinemark does not contend that the data upon which Dr. Fountain relied was inaccurate, but that

3    punch data would be more accurate in determining when employees worked. Oppo. Mot. Cert.

4    16. It points out that the schedule data that Dr. Fountain used was provided by Cinemark. *Id.* at

5    23.

6        While a district court may exclude expert evidence where "there is simply too great an

7    analytical gap between the data and the opinion proffered," *see Gen. Elec. Co. v. Joiner*, 522 U.S.

8    136, 146 (1997), I find that Cinemark's scheduling data is relevant to its corporate policies

9    regarding meal and rest breaks. The plaintiffs claim that "Dr. Fountain's analysis was not

10   intended to show exactly how many violations occurred, because liability rests on Cinemark's

11   common policies and practices." Reply Mot. Cert. 8 (Dkt. No. 108). Instead, the statistics cited

12   by Dr. Fountain purportedly demonstrate that Cinemark's policies facilitate labor code violations.

13   *Id.* The weaknesses in Dr. Fountain's declarations go to the weight I place on the evidence, and

14   not to its admissibility.

15       When looking at the weight of the evidence, I find merit in Cinemark's contention that Dr.

16   Fountain ignored potentially more reliable data of when employees actually punched in and out.

17   First, Cinemark points out that the punch data reveals less labor code violations than the

18   scheduling data, and Dr. Fountain's declaration, indicates. Cinemark's expert, Michael Buchanan,

19   testified that punch data for employees' clock-in and clock-out times revealed as low as 891 out of

20   390,493 missed meal breaks in shifts over five hours, or 0.23 percent. Buchanan Decl. ¶ 25

21   (Dkt. No. 98-7).

22       Next, the data analyzed does not reveal potentially valid reasons for the employees' missed

23   breaks or early departure from work, such as disciplinary reasons, illness, or voluntary reasons.

24   Fountain Depo. 69:1-70:5 (Dkt. No. 100-7). It also did not differentiate on a year-by-year or

25   month-by-month basis, by location, or by position within the theater. *Id.* at 80:1-25. Buchanan

26   illustrated how punch data provides more accurate information, and that it also reveals less

27   instances of wage violations. *See* Buchanan Decl. ¶¶ 19-21, 25.

28       For these reasons, I overrule Cinemark's objection. I will not strike Dr. Fountain's

United States District Court
Northern District of California

1   evidence.  That said, I do not find that it proves to be very relevant or helpful in determining issues

2   of class certification.  If anything, it underscores the fact that Cinemark's policy of giving

3   employees breaks was designed to be flexible and that actual compliance varied by manager.

4         **2.   Matthew Aragon**

5         Cinemark requests that I strike the declaration of Matthew Aragon because it was unable to

6   depose him.  Oppo. Mot. Cert. 17.  It claims that it was unable to serve a deposition subpoena on

7   Aragon and that plaintiffs could not produce Aragon.  *Id.*  In their reply, the plaintiffs do not

8   address this argument or provide any reason for their failure to produce Aragon for a deposition.

9         I sustain Cinemark's objection.  Because it was not able to depose Aragon, I will not

10  consider his declaration.  *See*, e.g., *Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-CV-

11  00701-AWI, 2013 WL 6844377, at *12-13 (E.D. Cal. Dec. 23, 2013) *report and recommendation*

12  *adopted,* No. 1:09-CV-00701-AWI, 2014 WL 200706 (E.D. Cal. Jan. 16, 2014); *Rojas v. Marko*

13  *Zaninovich, Inc.*, No. 1:09-CV-00705 AWI, 2012 WL 439398, at *2 (E.D. Cal. Feb. 9, 2012)

14  *report and recommendation adopted in part,* No. 1:09-CV-00705 AWI, 2012 WL 1232273 (E.D.

15  Cal. Apr. 12, 2012) *amended on reconsideration in part,* No. CIV-F-09-0705 AWI, 2013 WL

16  1326582 (E.D. Cal. Mar. 29, 2013); *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 571 (C.D.

17  Cal. 2007).

18        **3.   Other witnesses**

19        The plaintiffs submitted declarations from numerous potential class members, including

20  the named plaintiffs, in support of their contention that Cinemark implemented a policy of

21  understaffing that led to chronic labor code violations.  *See* Dkt. Nos. 84-1, 84-2, 84-3.  Cinemark

22  asks that this Court disregard "some or all" of the named plaintiffs' declarations as well as the

23  declarations of other class members.  Oppo. Mot. Cert. 18-20.

24        It is true that plaintiffs' declarations, when considered along with the excerpted deposition

25  testimony of the declarants submitted by Cinemark, are not always probative of plaintiffs'

26  argument.  The depositions often contradict the declarations or even provide support for

27

28

Cinemark's position.[2]  In addition, many of the declarations lack substantial facts or other indicia of personal knowledge.  Several declarants described Cinemark policies in theaters other than the ones in which they worked based upon visiting other theaters as a consumer, or dropping off supplies.  *See* Poncia Decl. ¶ 7 (Dkt. No. 84-2); Garrett Decl. ¶7 (Dkt. No. 84-2); Johnson Decl. ¶ 8 (Dkt. No. 84-2).  And many of the declarations contain bare, formulaic assertions that Cinemark failed to consistently provide timely, uninterrupted meal breaks and that they were subject to the same Cinemark policies as other employees.  *See, e.g.*, Poncia Decl. ¶¶ 3-5; Kohler Decl. ¶¶ 4-5 (Dkt. No. 84-2); Goniwicha Decl. ¶ 10 (Dkt. No. 84-2).  Meanwhile, in deposition testimony these witnesses testified that there were differences in the way that staffing and breaks were administered even in the same theater.  *See, e.g.*, Poncia Depo. 117:18-118:7 (Dkt. No. 100-15); Kohler Depo. 91:4-92:6 (Dkt. No. 100-10); Goniwicha Depo. 33:22-24 (Dkt. No. 100-9).

At the same time, it is not appropriate to strike the declarations; once again, the issues in the testimony relate to the strength of the evidence and not to the admissibility.  Cinemark's citation to *Yeager v. Bowlin* is inapposite.  *See* Oppo. Mot. Cert. 18.  There, the Ninth Circuit found that the district court did not abuse its discretion in invoking the sham affidavit rule, which provides that a party cannot create an issue of fact for the purposes of a motion for summary judgment by introducing a declarant's testimony that is inconsistent with a prior declaration.  693 F.3d 1076, 1080-81 (9th Cir. 2012).  *Yaeger* does not stand for the proposition that a court must strike any declaration that contradicts deposition testimony.  Nor do the other cases that Cinemark relies upon, *Juarez v. Jani-King of California, Inc.*, and *Evans v. IAC/Interactive Corp.*  Oppo. Mot. Cert. 19-20.  In both of those cases, the court found declarations to be unpersuasive but did not strike them.  *See Juarez v. Jani-King of California, Inc.*, 273 F.R.D. 571, 577 (N.D. Cal.

---

[2] For example, Ariana Kohler stated in her declaration that her meal breaks were almost always late, but when deposed stated that her meal breaks often were four hours into her shift or that she could not remember when they were at all.  *See* Kohler Decl. ¶ 5; Kohler Depo. 105:1-06:13. Sasha Burnside stated in her declaration that she sometimes failed to receive a meal break, but during her deposition admitted that she could not recall a time that she did not receive a meal break.  Burnside Decl. ¶ 5; Burnside Depo. 113:9-14:6.  Racheal Rodgers stated in her declaration that she did not recall receiving reporting time pay, but in her deposition stated that she never checked for such pay and did not know if she received it.  Rodgers Decl. ¶ 9; Rodgers Depo. 82:21-84:2; *see also* Melendez Depo. 97:1-98:7 (contradicting statements in declaration); Rivera Depo. 175:10-76:8 (same).

2011); *Evans*, 244 F.R.D. at 578.

Therefore, I overrule Cinemark's objection.  Although I will consider the declarations of the named plaintiffs and the other class members, I give greater weight to the more detailed depositions.  The declarations do little to advance plaintiffs' position.  *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, at *12 (N.D. Cal. Nov. 12, 2014) ("Plaintiffs' proffered declarations were obviously prepared by counsel, and rely on certain stock language repeated across declarations.  This is not reason in and of itself to doubt the veracity of the declarant. However, this evidence carries less weight than spontaneous statements made [in] putative class members' depositions, particularly where the deposition testimony is at odds with the declaration.").

**B.  Class Certification**

Plaintiffs' proposed class definition is "[a]ll persons who are and/or were employed as non-exempt employees in one or more of Defendants' California theaters since December 3, 2008."  Mot. Cert. 12.  They have not set forth any proposed subclasses in their motion for certification.  However, they argue that there are several questions of fact common to the class, including wage statement violations, meal and rest break violations, uncompensated overtime violations, and reporting time pay ("RTP") violations.  *Id.* at 1-2.

The central obstacle to class certification in this case is the existence of common questions of fact across the class, implicating both the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3).[3]  While Rule 23(a)(2) focuses on whether there is "[e]ven a single [common] question," Rule 23(b)(3) asks whether common questions predominate over individualized ones.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal citations and quotations omitted).

A common contention under Rule 23(a)(2) "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue

---

[3] Because I hold that the plaintiffs' proposed class cannot survive the predominance inquiry of Rule 23(b)(3) or the commonality inquiry of 23(a)(2), I do not address the other Rule 23 requirements.

United States District Court
Northern District of California

that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

There need only be one common question to the class in order to satisfy Rule 23(a)(2). *Id.* at

2556. By contrast, the predominance requirement of Rule 23(b)(3) is generally satisfied if a party

can show that an employer used a standard policy that was uniformly implemented. *See Kamar v.*

*Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) *aff'd sub nom. Kamar v. RadioShack*

*Corp.*, 375 F. App'x 734 (9th Cir. 2010) ("When the claim is that an employer's policy and

practices violated labor law, the key question for class certification is whether there is a consistent

employer practice that could be a basis for consistent liability."). Individualized damages

calculations alone cannot defeat certification, although they are a relevant factor for courts to

consider. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Harris v.*

*Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010).

      The plaintiffs argue that there are common questions of law and fact because Cinemark

implemented uniform policies across its theaters in California that resulted in violations of the

Labor Code. They contend that Cinemark has a uniform practice of understaffing theaters and

"keeping theater staff to a bare minimum at all times." Mot. Cert. 4. This allegedly results in the

routine denial of employees' meal and rest break periods, reporting time pay violations, and

uncompensated overtime. Plaintiffs assert that this problem is particularly severe on weekends

and holidays. *Id.* at 7-8.

      Cinemark's rules and policies are recorded in several written documents. First, it issued

employee guidelines that are provided to all employees and typically kept in the break rooms of

theaters. Amey Depo. 55:21-56:3; Employee Guidelines (Dkt. No. 99-14, Ex. C).[4] Second, it

issued policies and procedures that are specific to California employees. *See* Meal & Rest Break

Policy (Dkt. No. 99-15, Ex. A); Reporting Time Pay Procedures (Dkt. No. 99-14, Ex. D). Third, it

provided personnel guidelines that discuss employee expectations as well as breaks. Personnel

Guidelines (Dkt. No. 84-2. Ex. Q). In resolving the motion for class certification, I consider all of

---

[4] Cinemark submitted two versions of the employee guidelines, one edition from 2003 and one edition from 2013. *See* Dkt. No. 99-14 at Ex. B, Ex. C. Because these versions do not differ in any respect that is material to this case, I will refer to the 2013 version throughout this order.

1    plaintiffs' evidence and the depositions of plaintiffs' witnesses submitted by Cinemark.  I do not

2    need to discuss the many witness declarations submitted by Cinemark in opposition to plaintiffs'

3    motion for certification.  *See* Dkt. No. 98-2.

4        Generally, class certification should be approached on a claim-by-claim basis.  *Harris*, 753

5    F. Supp. 2d at 1012.  The plaintiffs' claims that are relevant to this motion are as follows:  (i)

6    failure to provide meal and rest periods in violation of California Labor Code §§ 226.7 and 512;

7    (ii) failure to pay wages for overtime work in violation of California Labor Code §§ 200-204, 510,

8    1194, and 1198; (iii) failure to provide accurate itemized wage statements in violation of

9    California Labor Code §§ 226 and 1174;[5] and (iv) failure to pay reporting time pay, as well as the

10   other mentioned violations, in violation of California Business and Professions Code §§ 17200 et

11   seq.  *See Amey* Compl. ¶ 27-49, *Brown* Compl. ¶¶ 44-48, 56-90.[6]

12       **1. Meal and rest break violations**

13       Cinemark's written meal break policy provides that employees shall take a meal period of

14   no less than 30 minutes on or before the end of every fifth hour of work.  Meal & Rest Break

15   Policy at 1-2.  This policy is included in the employee guidelines, the personnel guidelines and the

16   California guidelines.  *See* Personnel Guidelines at 13; Employee Guidelines at 34; Meal & Rest

17   Break Policy at 1-2.  The employee guidelines state that employees may not work during breaks,

18   may leave the premises during breaks, and must clock in and out during breaks.  Employee

19   Guidelines at 34.  In addition, managers are prohibited from discouraging employees from taking

20   breaks.  *Id.* at 35.  Meal periods cannot be waived.  *Id.*

21       The Meal & Rest Break Policy provides the same information and provides that employees

22   shall be paid an extra hour for any day in which they do not take a meal break, take a meal break

23   late, or take a meal break that is less than 30 minutes long.  Meal & Rest Break Policy at 1.

24   General managers must notify employees of these policies, schedule proper meal breaks, and

25   ensure that employees take the breaks and properly clock in and out.  *Id.* at 2.  They are also

26

27   _____

     [5] I address this issue in Section III, below.
28   [6] Plaintiffs brought other causes of action as well that are not at issue or that are derivative claims
     that are resolved in the resolution of the named claims.

United States District Court
Northern District of California

prohibited from changing employees' meal break punch times. *Id.*

According to the evidence, the practice of scheduling meal breaks differed depending on the manager. *See*, e.g., Amey Depo. 169:7-13; Garrett Depo. 107:12-20, 113:3-9 (Dkt. No. 100-8); Krick Depo. 80:11-81:5 (Dkt. No. 100-11); Rivera Depo. 90:19-91:18 (Dkt. No. 100-16); Cott Depo. 140:16-41:14 (Dkt. No. 100-4). Although general managers sometimes set employee schedules and meal breaks, in some theaters assistant managers took on these responsibilities; the practice varied from theater to theater. Amey Depo. 169:7-13; Garrett Depo. 107:12-18, 113:3-9; Krick Depo. 80:11-81:5; Rivera Depo. 96:16-97:11; Cott Depo. 140:16-41:14. Some managers included meal breaks in the employee schedule, while others did not. *See* Rodgers Depo. 88:23-89:1 (Dkt. No. 100-18) (schedule did not include breaks); Amey Depo. 123:11-22 (made rest break schedule daily); Brown Depo. 70:5-10.

Cinemark's clocking system will not allow an employee to clock back in early from a meal break. Smith Depo. 71:15-72:21. When an employee clocks in a meal break later than the time required by law, or does not take a break at all, Cinemark's system automatically generates a premium payment for that employee. *Id.* at 72:6-73:17. Employees are required to review their punch records weekly. Amey Depo. 155:17-19. If the punch records are incorrect, employees are told to inform a manager, who will correct the errors. *Id.* at 155:20-156:6.

Cinemark's written policy regarding rest breaks provides that employees shall receive 15 minute rest breaks for every four hours that they work. Meal & Rest Break Policy at 2. In contrast to meal breaks, rest breaks are less often scheduled in advance, with assistant managers usually in charge of ensuring that employees receive rest breaks. *See*, e.g., Goniwicha Depo. 111:2-12:18 (meal and rest breaks were on a schedule posted on filing cabinet, each department had separate break schedules for employees and for managers); Amey Depo. 169:11-13. If an employee skips or takes a late rest break, no premium payment is automatically generated in Cinemark's clocking system. Smith Depo. 75:11-16. If an employee misses a rest break, Cinemark's official policy directs that the employee should sign a form at the end of the day stating why he did so, and he will get paid for the missed rest break. *Id.* at 76:3-25.

In arguing that Cinemark has a policy that facilitates meal and rest break violations,

United States District Court
Northern District of California

1    plaintiffs do not contend that Cinemark's *written* policies violate wage and hour laws.  Nor do

2    they provide any direct evidence that Cinemark has such an informal policy, such as testimony

3    from salaried general managers regarding Cinemark's managerial training or any written

4    memoranda.  Instead plaintiffs rely almost entirely on circumstantial evidence:  declarations from

5    nonexempt employees, including assistant managers, and the statistical evidence from Dr.

6    Fountain.

7          First, plaintiffs point to the lack of a policy requiring employees to remove their name tags

8    or leave the theater floor during breaks.  Mot. Cert. 8-9.  However, Cinemark does not *require*

9    employees to keep their name tags on during breaks, and employees are able to spend their breaks

10   in areas where there are no customers.  Plaintiffs also emphasize that Cinemark's timekeeping

11   system will not allow employees to clock back in early.  *Id.* at 6-10.  But this just as easily may

12   reinforce, rather than inhibit, a policy of providing full-length breaks.

13         Next, plaintiffs argue that Cinemark has a policy of understaffing on weekends, holidays,

14   and other busy times.  *Id.* at 7-8.  However, witness testimony indicates that Cinemark increases

15   staffing during those times, and plaintiffs have not presented any other evidence that Cinemark has

16   a uniform policy of understaffing.  *See* Rivera Depo. 140:11-41:13 (theater understaffed when

17   there was a bad estimate of business); *see also* Amey Depo. 68-70; Brown Depo. 96:4-98:18; De

18   La Rosa Depo. 81:16-84:23.

19         The gravamen of plaintiffs' argument is that "[b]y incorrectly *scheduling* breaks, and then

20   by making breaks dependent on managers' permission, Cinemark has uniformly violated the

21   Labor Code."  Reply Mot. Cert. 8.  However, this reasoning has been rejected by the Supreme

22   Court, which found that:  "[o]n its face, of course, [managerial discretion] is just the opposite of a

23   uniform employment practice that would provide the commonality needed for a class action; it is a

24   policy *against having* uniform employment practices.  It is also a very common and presumptively

25   reasonable way of doing business."  *Dukes*, 131 S. Ct. at 2554.

26         The central focus of plaintiffs' argument is precisely what makes their meal and rest break

27   claims unsuitable for class certification.  The overwhelming weight of the evidence demonstrates

28   that the greatest factor in determining whether an employee actually received compliant meal and

rest breaks was the manager on duty.  Amey Depo. 189:15-90:9; Burnside Depo. 56:15-25 (Dkt. No. 100-3), 132:2-133:8; Goniwicha Depo. 112:22-15:19; Krick Depo. 53:23-55:25, 78:20-79:9; Cott Depo. 140:16-25; Melendez Depo. 60:17-62:10 (Dkt. No. 100-13); De La Rosa Depo. 68:16-69:18; *see also* Rivera Depo. 71:2-25 (different theaters were staffed differently).  The plaintiffs have not produced sufficient evidence to show that managers' failure to provide these breaks was uniform or reflected a policy that was instituted by Cinemark.

Significantly, in depositions many witnesses indicated that they received their full breaks on time when the manager on duty ran a "pretty tight ship," was "by the book," or was otherwise a "good" manager.  De La Rosa Depo. 69:20-70:21, 150:1-54:21; Roberson Depo. 124:15-25:3 (Dkt. No. 100-17); Rivera Depo. 73:19-25; Cott Depo. 230:2-12, 248:25-49:20; Krick Depo. 55:12-13; Melendez Depo. 61:18-62:6, 69:3-11, 83:22-83:16; Burnside Depo. 57:6-58:1.  By contrast, when employees did not receive timely breaks, it was due to managers who were disorganized, forgetful, and generally unable to effectively implement Cinemark's corporate policies.  *See* Rodgers Depo. 32:20-33:24 (stating that after 2008, senior managers told employees that "they had gotten in trouble by corporate and that we had to have our breaks by our five-hour mark or we would get [a] write-up."); Lopez Depo. 153:2-15 (Dkt. No. 100-12) (more difficult to get breaks when there was no manager oversight); Amey Depo. 93:2-4 (assistant managers responsible for enforcing corporate policies); Krick Depo. 79:3-14.  The evidence seriously undermines plaintiffs' contention that Cinemark had an unwritten uniform policy of denying breaks.

Witness declarations indicate that assistant managers often did not take breaks in order to ensure that their employees could.  Nearly all of the plaintiffs' witnesses who were assistant managers stated that their employees always received timely rest breaks.  *See* Amey Depo. 60:20-22, 78:6-10; Garrett Depo. 113:11-14:8; Goniwicha Depo. 103:9-25, 109:23-11:1; Krick Depo. 85:10-86:4; Roberson Depo. 94:3-14; Rivera Depo. 132:17-33:5; Cott Depo. 226:8-19.  Instead of showing a uniform policy of denying breaks to all class members, this evidence indicates that all non-managerial employees received adequate breaks.

The reasoning of *York v. Starbucks Corp.* is particularly applicable to this case.  In

addressing a similar a case involving meal and rest break violations under California law, the court stated:

> [W]hether and when an employee took a rest break was dependent on the manager who was in charge of the shift. And whether an employee was interrupted during a break turned on the many variables that could affect the demands placed on employees at any given time during the work day. . . *This evidence shows that the reasons why employees may have missed breaks has less to do with corporate policy and much more to do with individual circumstances.*

*York*, 2011 WL 8199987, at *27 (emphasis added). The evidence in that case, in which the court denied certification, is parallel to the conduct outlined above. *See also Villa v. United Site Servs. of California, Inc.*, No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *9 (N.D. Cal. Nov. 13, 2012).

The evidence reveals several other facts that fully defeat plaintiffs' theory of class certification. Some witnesses testified that they did not inform management of the fact that they had missed meal and/or rest breaks. *See*, e.g., Goniwicha Depo. 158:3-25, 162:18-22. Sometimes employees voluntarily assisted customers while on break, voluntarily took a shorter rest break because there was nothing to do, or waived their rest break altogether. *See* Rivera Depo. 151:12-52:13 (missed meal and rest breaks were always by choice); Kohler Depo. 85:5-14 (Dkt. No. 100-10); Burnside Depo. 92:7-9. Some witnesses stated that employees would occasionally forget to clock out for the meal breaks, or would take breaks late despite being told to take them earlier. Amey Depo. 61:5-10; Garrett Depo. 104:20-106:18.

Such evidence "does not and cannot show why any particular meal break was taken at a particular time and, more to the point, whether the break was taken at a time preferred by the employee for whatever reason or was mandated by a manager who ignored the requirement that he provide his subordinates with a timely meal break." *York*, 2011 WL 8199987, at *26; *see also Kimoto v. McDonald's Corps.*, No. CV 06-3032PSGFMOX, 2008 WL 4690536, at *6 (C.D. Cal. Aug. 19, 2008) (punch data not dispositive because "there is no financial incentive for an employee to clock in and out for a ten-minute rest period, since that employee will get paid regardless. Thus, without other evidence, the Court cannot assume that the employees accurately

recorded the timing of their breaks").

Plaintiffs also did not establish that Cinemark uniformly failed to provide meal break pay when breaks were missed or late.  Many witnesses did not know or could not remember whether they had been paid premium payments.  Kohler Decl. ¶¶ 6-7; Burnside Decl. ¶¶ 5, 7 (Dkt. No. 84-2); Krick Depo. 120:4-14 (Dkt. No. 84-2).  Although there is evidence that general managers, senior assistant managers, and assistant managers altered employees' punch records to reflect timely breaks when they were in fact missed or late, plaintiffs presented no evidence that this was connected to any policy of Cinemark's, instead of individual managers' efforts to avoid getting in trouble.  *See* Goniwicha Depo. 107:6-14 (sometimes adjusted time cards for valid reasons); Rivera Depo. 39:18-20 (same); Amey Depo. 87:14-88:5 (received meal break pay for missed breaks even when someone clocked him in and out); De La Rosa Depo. 193:17-96:8.  Witness testimony even fails to specify that the alleged violations occurred within the class period--some of plaintiffs' evidence cites to violations that occurred before the class period.  Rodgers Depo. 96:2-98:5 (meal and rest break violations occurred before 2008).

All of these facts contradict plaintiffs' position that Cinemark deliberately designed a system whereby employees would be prevented from taking breaks.  Plaintiffs failed to establish that Cinemark implemented a standard policy in a uniform manner throughout the proposed class.  There is not a single common question of law to the class, and plaintiffs have not satisfied the commonality and predominance requirements of 23(a)(2) and 23(b)(3).  I will not certify the proposed class with respect to the meal and rest break claims.  *See York*, 2011 WL 8199987, at *27, 32 (denying class certification because neither commonality nor predominance was satisfied); *Ramirez v. United Rentals, Inc.*, No. 5:10-CV-04374 EJD, 2013 WL 2646648, at *6 (N.D. Cal. June 12, 2013), *appeal dismissed* (Aug. 8, 2013) (same).

### 2.  Failure to pay reporting time pay

The plaintiffs argue in a conclusory manner that Cinemark has a policy of sending employees home before they worked half of their shift without providing employees with reporting time pay ("RTP").  Mot. Cert. 6.  The only practice that they point to in support of this contention is Cinemark's policy of requiring managers to complete paperwork before employees

17

may receive RTP, instead of providing it automatically when employees leave work before completing half of their shift.   *Id.*   Plaintiffs claim that this "reinforces the company policy against complying with reporting time law."   *Id.*

The Cinemark employee guidelines state that:

> On occasions when business volume is slower than anticipated, non-essential Employees may volunteer to leave early.   In such instances, the Employee is paid for the actual hours worked.   If an Employee is sent home involuntarily other than as a disciplinary reason for tardiness or because the Employee is unfit to work before he or she has worked half of his or her scheduled shift, Cinemark will pay the Employee "reporting time pay" to the extent required by law.

Employee Guidelines at 34.  Cinemark's other written policies recognize that "the company is required by law to pay [employees] for at least a half-day of work" when they are sent home before completing one-half of their shift.  Reporting Time Pay Procedures at 1.  General managers are responsible for entering RTP into the electronic system.  *Id.*  Employees are not entitled to RTP if they leave for medical or disciplinary reasons.  *Id.*  Witness testimony indicates that managers sent employees home early when business was slow, with decisions about whether and who to send home early varying by the manager in charge.  *See*, e.g., Amey Depo. 199:5-200:22; Rivera Depo. 98:7-100:12.

The plaintiffs' argument for class certification fails.  There is no evidence of a uniform policy of failing to credit employees with RTP when they were sent home before completing half of their shift.  As with the meal and rest break claims, whether an employee was sent home early depended almost entirely on the manager on duty, which undermines plaintiffs' argument that there was a uniform policy.

Many employees, especially managers, were rarely or never sent home early and before completing half of their shift.  *See* Garrett Depo. 150:12-23; Krick Depo. 148:12-49:14; Brown Depo. 167:22-68:13; De La Rosa Depo. 202:20-05:3.  Moreover, many witnesses were unable to state conclusively that when they were sent home before completing half of their shift, Cinemark denied them RTP.  *See*, e.g., Amey Depo. 202:3-6 (sent home after completing half shift or paid for half shift); Roberson Depo. 141:10-42:13; Rodgers Depo. 82:21-84:2.  The plaintiffs' evidence

of reporting time pay violations also does not account for instances where employees were sent home early because they were disciplined, volunteered, or because of a manager's personal dislike of them that did not reflect any policy of Cinemark. *See* Amey Depo. 202:16-03:23; Burnside Depo. 102:1-11; Morales Depo. 42:3-43:23 (Dkt. No. 100-14); Rivera Depo. 100:13-19; Lopez Depo. 231:4-17, 233:7-22.

Ultimately, there is very little evidence of employees being sent home (i) before completing half of their shift; (ii) involuntarily and not for disciplinary or medical reasons; and (iii) without being credited with reporting time pay.[7]  Of all the deposed witnesses who claimed to have been sent home early, only one established all three of these requirements with certainty.  *See* Burnside Depo. 97:21-25, 99:10-14, 106:2-4 (went home early due to sickness or doctor's appointment once a month and never checked to see if received reporting time pay); Poncia Depo. 86:9-17 (was not positive that she did not receive RTP); Morales Depo. 42:3-43:13, 126:3-8 (left early for disciplinary reasons, and thought he was entitled to RTP for all scheduled hours, and not only one-half of scheduled shift); Rodgers Depo. 82:21-84:2 (did not check to see if she received RTP; sometimes left voluntarily or due to illness); Cott Decl. ¶ 10 (Dkt. No. 84-2) (did not specify that he went home involuntarily and not for disciplinary or medical reasons); Roberson Depo. 142:6-43:6 (did not know if she was paid RTP).  This employee, Amber Lopez, stated that at some theaters RTP was never paid, but at others it was always paid.  Lopez Depo. 49:6-52:25.  Her testimony undercuts the existence of a uniform policy implemented by Cinemark.

Plaintiffs were unable to persuasively establish that any of their proffered witnesses experienced routine RTP violations, let alone a uniform company policy of denying RTP to employees.  There is no common question under Rule 23(a)(2) or 23(b)(3).  Plaintiffs' reporting time pay claims are not certified as a class claim.

### 3.  Uncompensated overtime

The plaintiffs argue that Cinemark routinely circumvented overtime pay requirements by

---

[7] In spite of their "best recollection" that they were not paid RTP, several witnesses admitted during their depositions that they never checked whether they were paid and did not know with certainty that they were not.  *See*, e.g., Burnside Decl. ¶ 9; Burnside Depo. 106:1-4; Poncia Decl. ¶ 6; Poncia Depo. 86:9-23; Rodgers Decl. ¶ 9 (Dkt. No. 84-3); Rodgers Depo. 82:21-84:2.

United States District Court
Northern District of California

United States District Court
Northern District of California

forcing employees to work off-the-clock before or after they clocked in and out of work.  Mot.

Cert. 7.  They state that Cinemark's policy of understaffing and its strong discouragement of

overtime work forced employees to work off-the-clock in order to finish their tasks without

getting disciplined.  *Id.*  They also point to Cinemark's prohibition of overtime work without prior

express permission from managers.  *Id.*

To prevail on their claim for uncompensated overtime or off-the-clock work, the plaintiffs

should establish that "(1) [an employee] performed work for which he did not receive

compensation; (2) that defendants knew or should have known that [the employee] did so; but that

(3) the defendants stood 'idly by.'"  *York*, 2011 WL 8199987, at *17.  Cinemark's written policies

provide that employees who work overtime are entitled to overtime pay.  *See* Employee

Guidelines at 34.  However, overtime is discouraged and employees may be disciplined for

working overtime without permission.  *Id.*  Employees must also obtain express permission from

managers before working overtime.  *Id.*

The plaintiffs have not asserted that Cinemark failed to pay employees for overtime hours

worked on the clock, but instead state that employees must frequently work off-the-clock to finish

tasks.  However, some class members never experienced any overtime pay violations.  *See* Poncia

Decl. ¶ 3; Kohler Decl. ¶ 3.  Some employees stated that they were always properly compensated

for overtime work, while others did not tell their managers that they worked off-the-clock.

Rodgers Depo. 72:2-73:10; Rivera Depo. 123:9-21; Brown Depo. 144:22-45:10; Melendez Depo.

31:1-9.

The witnesses' descriptions of the violations contradict a corporate policy regarding

overtime.  The nature of the tasks that employees were asked to do – taking out the trash, finishing

tasks that they forgot – is indicative less of a corporate policy of forcing employees to work

overtime without compensation than of aberrations from this policy by individual employees or

managers.  *See* Goniwicha Depo. 76:4-14 (only worked overtime when something "happened just

out of the normal," like power outage); De La Rosa Depo. 252:18-53:9 (doing certain tasks after

clocking out felt like a "favor.").  Some employees completed tasks off-the-clock at night because

they were waiting for others to finish so that they could leave in a group for safety reasons.  *See*,

20

*e.g.*, Cott Depo. 132:1-7.  As with the meal and rest break claims, plaintiffs' work requirements

depended on the manager, with certain managers asking employees to work after they had clocked

out and others never doing so.  Cott Depo. 152:11-53:11 (more rule-oriented managers wouldn't

ask employees to work off-the-clock); Brown Depo. 140:11-17.

Courts have found that class certification is inappropriate when faced with similar

arguments because the fact that "assistant store managers had an incentive to work off the clock

[does not mean] that they actually did so and that [defendants] knew of such off-the-clock work."

*Koike v. Starbucks Corp.*, No. C 06-3215 VRW, 2008 WL 7796650, at *8 (N.D. Cal. June 20,

2008) *aff'd,* 378 F. App'x 659 (9th Cir. 2010); *see also Brewer*, 2014 WL 5877695, at *13

("GNC's policies and efforts to keep clerical hours within budget are not enough to establish

substantial evidence of a systematic company policy to pressure or require employees to work off

the clock") (internal citations and quotations omitted); *York*, 2011 WL 8199987, at *29.  There is

not enough evidence to demonstrate that Cinemark knowingly caused employees throughout the

proposed class to work off-the-clock without providing them with compensation. As with the

plaintiffs' other claims, this claim is not suitable for class certification.

## II.  PAGA CLAIMS

### A.  Plaintiffs Failed to Exhaust the Wage Statement Claim

In its motion for judgment on the pleadings, Cinemark contends that the PAGA claim

arising under Labor Code § 226(a)(9) should be dismissed because plaintiffs failed to properly

exhaust administrative remedies as required by section 2699.3 of the California Labor Code.  Mot.

J. Pleadings 13-16.[8]  This provision provides that before bringing civil claims under PAGA,

aggrieved employees or representatives must give "written notice by certified mail to the Labor

and Workforce Development Agency and the employer of the specific provisions of this code

alleged to have been violated, including the facts and theories to support the alleged violation."

[8] Cinemark also briefs this argument in its motion to deny certification.  Mot. Dismiss 20-22.  I address this as part of Cinemark's motion for judgment on the pleadings because my analysis parallels my dismissal of plaintiffs' claims under Rule 12(b)(6).  *See Ovieda*, 2013 WL 3887873, at *1 (addressing administrative exhaustion on Rule 12(c) motion); *Lessard v. Trinity Prot. Servs., Inc.*, No. 2:10-CV-01262-MCE, 2010 WL 3069265, at *1 (E.D. Cal. Aug. 3, 2010) (addressing on Rule 12(b)(6) motion).

United States District Court
Northern District of California

1    CAL. LAB. CODE § 2699.3(a)(1).

2         The purpose of the notice requirement is to give employers notice and to inform the Labor

3    and Workforce Development Agency ("LWDA") of the potential labor code violations so that it

4    may choose whether to investigate or prosecute on its own.  *Id.*  "To constitute adequate notice

5    under § 2699.3(a), the notice must allege at least some 'facts and theories' specific to the

6    plaintiff's principal claims; merely listing the statutes allegedly violated or reciting the statutory

7    requirements is insufficient."  *Ovieda v. Sodexo Operations, LLC*, No. CV 12-1750-GHK SSX,

8    2013 WL 3887873, at *3 (C.D. Cal. July 3, 2013) (internal citations and quotations omitted).

9         Regarding her claim under section 226, Brown sent a notice letter to the defendants that

10   stated:

> California Labor Code section 226(a) requires employers to make,
> keep and provide true, accurate, and complete employment records.
> CINEMARK did not provide Ms. Brown and other aggrieved
> employees with properly itemized wage statements.  The wage
> statements they received from CINEMARK were in violation of
> California Labor Code section 226(a).  The violations include,
> without limitation, failing to state the total hours they worked as a
> result of working off-the-clock and not recording or paying for those
> hours.

16   Dkt. No. 83-17 at 2.  Amey's notice letter provides even less information.  It states only that the

17   defendants "willfully fail[ed] to provide Plaintiff and Class Members with accurate semimonthly

18   itemized statements of the total number of hours each of them worked, the applicable deductions,

19   and the applicable hourly rates in effect during the pay period."  Dkt. No. 83-18 at 1.  Their

20   complaints also allege the wage statement claims as derivative from the other asserted wage and

21   hour violations.

22        Plaintiffs contend that the notice letter was sufficient because it accused Cinemark of

23   failing to provide the "applicable hourly rates in effect during the pay period."  Oppo. Mot.

24   Dismiss 17 (Dkt. No. 101).  According to plaintiffs, this statement reflects their "core" theory that

25   Cinemark's wage statements did not properly list overtime rates.  *Id.*  Plaintiffs' argument is

26   unpersuasive because this phrase does no more than recite the language of section 226(a)(9).  *See*

27   CAL. LAB. CODE § 226 (statement must show "all applicable hourly rates in effect during the pay

28   period and the corresponding number of hours worked at each hourly rate").  Parroting the statute

United States District Court
Northern District of California

that was violated is insufficient to provide notice under Section 2699.3. *See Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667, 669 (9th Cir. 2011).

Plaintiffs cite a string of cases in support of their position, claiming that it is unreasonable to expect them to include every theory and detail of their allegation under section 226 prior to discovery. Oppo. Mot. Dismiss 18-19. While I agree with this general proposition, it does not allow plaintiffs to provide such bare notice as in this case. After analyzing the numerous cases cited by the parties, it is clear that plaintiffs are required to provide at least some information regarding the theories relating to the alleged violations. They failed to do so here.

In *Ovieda*, the plaintiffs' notice letter included conclusory factual allegations that the defendants did not comply with the Labor Code requirements regarding meal and rest breaks. *See* 2013 WL 3887873, at *3-4. The court concluded that "[t]he notice contains no facts specific to Ovieda's principal meal and rest break claim and unpaid wages claim and no information about what Defendants' allegedly illegal policy and practices are." *Id.* at *4. In doing so, it distinguished cases that the plaintiffs rely upon in their opposition, *Cardenas v. McLane FoodServices, Inc.*, 796 F. Supp. 2d 1246, 1261 (C.D. Cal. 2011), and *Lessard v. Trinity Prot. Servs., Inc.*, No. 2:10-CV-01262-MCE, 2010 WL 3069265, at *3 (E.D. Cal. Aug. 3, 2010). *See id.*; Oppo. Mot. Judgment Pleadings at 19-22.

In *Singletary v. Teavana Corp.*, the court granted summary judgment where the notice letters "clearly failed to provide any factual allegations whatsoever." No. 5:13-CV-01163-PSG, 2014 WL 1760884, at *3 (N.D. Cal. Apr. 2, 2014) (internal citations and quotations omitted). The court found that as a result, the letters could not provide adequate notice under Ninth Circuit law. *Id.*; *see also Archila*, 420 F. App'x at 669 (affirming dismissal of PAGA claims based upon failure to exhaust administrative remedies where "demand letter merely lists several California Labor Code provisions Archila alleges KFC violated" and requests an investigation); *Wong v. AT&T Mobility Servs. LLC*, No. CV 10-8869-GW FMOX, 2012 WL 8527485, at *3 (C.D. Cal. July 2, 2012); *Soto v. Castlerock Farming & Transp. Inc.*, No. CIV-F-09-0701 AWI, 2012 WL 1292519,

at *8 (E.D. Cal. Apr. 16, 2012).[9]

The cases cited by plaintiffs are distinguishable and affirm that the notice letter in this case does not contain sufficient detail regarding the theories of plaintiffs' claims. In *Cardenas v. McLane FoodServices, Inc.*, cited by plaintiffs, the notice letter identified a group of employees who were based in Southern California. 796 F. Supp. 2d 1246, 1259-60 (C.D. Cal. 2011). When the defendants objected to the later inclusion of other employees, the court held that the notice letter did not need to provide "every potential fact or every future theory." *Id.* at 1260. *Cardenas* did not discuss the threshold adequacy of a notice letter. It stands for the proposition that a party's theory that was properly provided in the notice letter may be expanded later. *See also Ovieda*, 2013 WL 3887873, at *4 ("*Cardenas* . . . is not directly relevant because the defendant did not dispute that the plaintiffs set forth sufficient facts to support their claims of labor violations").

The other cases to which the plaintiffs cite are similarly distinguishable. In *Gonzalez v. Millard Mall Services, Inc.*, the court found that notice was sufficient when the notice letter contained specific information that the defendants issued checks out of an out-of-state bank and failed to include the address of that bank on checks. No. 09CV2076-AJB WVG, 2012 WL 3629056, at *6 (S.D. Cal. Aug. 21, 2012). In *Lessard v. Trinity Protection Services, Inc.*, the notice letter described the defendants' specific policies. No. 2:10-CV-01262-MCE, 2010 WL 3069265, at *3 (E.D. Cal. Aug. 3, 2010). In *Hoang v. Vinh Phat Supermarket, Inc.*, the plaintiffs provided numerous facts about the defendants' policies and how they applied to the plaintiffs. No. CIV. 2:13-00724 WBS, 2013 WL 4095042, at *9 (E.D. Cal. Aug. 13, 2013).[10] And in *Moua v. International Business Machines Corp.*, in what it described as a "close call," the court found that a notice letter was sufficient because it named specific employees and identified some facts and theories of the alleged violations. No. 5:10-CV-01070 EJD, 2012 WL 370570, at *5 (N.D. Cal.

---

[9] Because I GRANT defendants' motion for judgment on the pleadings, plaintiffs' request for judicial notice is DENIED as moot. See Dkt. No. 85.

[10] *Medlock v. Taco Bell Corp.* is similarly distinguishable, as the notice letter provided substantial facts and theories, such as that employees received incentives that were not incorporated into their overtime rate. *See* No. 1:07-CV-01314-SAB, 2014 WL 2154444, at *3 (E.D. Cal. May 22, 2014).

United States District Court
Northern District of California

1    Jan. 31, 2012).  The court did not discuss the language of the actual notice letter.[11]

2          Plaintiffs also cite to *York v. Starbucks Corp.*, which does appear to support their position.

3    Oppo. Mot. Dismiss 19.  However, the bulk of the cases cited by both parties indicates that the

4    notice letter in this case is insufficient.  Given the standard for notice under PAGA illustrated in

5    the cases discussed, I do not find *York* to be persuasive in this case.

6          In concluding that plaintiffs' section 226 claims do not meet the notice requirements of

7    section 2699.3, I find that the notice letters did not give the LWDA or Cinemark any specific

8    information regarding the potential violations, such as the fact that Cinemark listed the same pay

9    rate for both overtime pay and regular pay.  The notice letters contain the allegation that Cinemark

10   failed to record, state, or pay for hours worked by employees off-the-clock.  Inclusion of this one

11   factual allegation, while it may suffice to state a claim under Rule 12(b)(6), does not adequately

12   give notice of the "facts and theories" of plaintiffs' claim under section 226.  That sole factual

13   allegation in the notice is unrelated to plaintiffs' new claim that the overtime rate was listed as the

14   same as employees' hourly rate.  This bare allegation cannot give proper notice either to the

15   defendants or to the LWDA.

16         Because they failed to adequately exhaust administrative remedies, the plaintiffs' claims

17   under PAGA for violations of section 226 are dismissed with prejudice.  *See Ovieda*, 2013 WL

18   3887873, at *5 (C.D. Cal. July 3, 2013) ("allowing an amended notice to be submitted after the

19   civil action has already been filed defeats the very purpose of the exhaustion requirement").[12]

20

21   _____

     [11] Plaintiffs also cite to *Wren v. RGIS Inventory Specialists*.  Oppo. Mot. Dismiss 19-20.  That case

22   is not on point because it did not address the issue before me.  Instead, the court stated that "to the
     extent there was any question regarding the sufficiency of that notice, the corrected notice

23   resolved that issue."  *Wren v. RGIS Inventory Specialists*, No. C-06-5778 JCS, 2007 WL 484793,
     at *2 (N.D. Cal. Feb. 9, 2007).  Because this issue can be resolved without examining the briefs

24   filed in other cases, but by examining opinions in this district and others, plaintiffs' request for
     judicial notice is DENIED.  *See* Dkt. No. 101-1.  Similarly, plaintiffs' request for judicial notice of

25   the complaint in *Jaimez, et al. v. DAIOHS U.S.A., Inc., et al.*, No. BC372665 (L.A. Super. Ct. July
     19, 2010), *see* Dkt. No. 103-4, and defendants' request for judicial notice of the reply brief in

26   *Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI-MJS, *see* Dkt. No. 105, are DENIED as I do not
     need to rely on them.

27   [12] Although plaintiffs argued at the hearing that the defendants would suffer no prejudice if I
     allowed them to cure their failure to provide notice, they ignore the fact that section 2699.3 is also

28   designed to provide notice to the LWDA.  The failure to properly notify the LWDA, and possibly
     prevent future litigation, cannot be remedied.

United States District Court
Northern District of California

United States District Court
Northern District of California

### B. The Other PAGA Claims Also Fail

Cinemark makes two arguments for dismissing the remainder of the PAGA claims.  The first is that PAGA claims must satisfy the class certification requirements of Rule 23.  Mot. Dismiss 12.  This argument is precluded by case law in this district, the Ninth Circuit, and California.[13]

Although the Ninth Circuit has not expressly ruled on "whether a federal court may allow a PAGA action otherwise within its original jurisdiction to proceed under Rule 23 as a class action," it has declared that "Rule 23 and PAGA are more dissimilar than alike."  *Baumann v. Chase Investment Services Corp.*, 747 F.3d 1117, 1124 (9th Cir.) *cert. denied,* 135 S. Ct. 870 (2014).  Before and after *Baumann*, courts in this district have routinely held that "PAGA actions, though representative, need not be brought as class actions under Rule 23."  *See*, e.g., *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1135 (N.D. Cal. 2014) ("the vast majority of courts in this district . . . have held that representative PAGA claims need not be certified under Rule 23 to proceed") (internal citations and quotations omitted); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at \*20-21 (N.D. Cal. Mar. 28, 2014); *Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL, 2014 WL 1117614, at \*2 (N.D. Cal. Mar. 19, 2014); *Gallardo v. AT & T Mobility, LLC*, 937 F. Supp. 2d 1128, 1138 (N.D. Cal. 2013); *Moua v. Int'l Bus. Machines Corp.*, No. 5:10-CV-01070 EJD, 2012 WL 370570, at \*3 (N.D. Cal. Jan. 31, 2012).  Likewise, the California Supreme Court has found that PAGA claims do not need to satisfy class action requirements.  *See Arias v. Superior Court*, 46 Cal. 4th 969, 981-86 (2009).  I follow the majority of courts in holding that the plaintiffs' PAGA claims are not subject to the requirements of Rule 23.[14]

The second argument to dismiss the PAGA claims does have merit, though not in the

---

[13] In support of this contention, defendants cite to one case decided in this district, *Taylor v. W. Marine Products, Inc.*, No. C 13-04916 WHA, 2014 WL 1248162 (N.D. Cal. Mar. 26, 2014).  Mot. Dismiss 12.  However, *Taylor* discussed the status of PAGA and class claims in the context of Article III standing, and is not on point.  2014 WL 1248162, at \*2-3.

[14] In doing so, I reject plaintiffs' argument that Cinemark's motion is untimely and must be resolved under Federal Rule of Civil Procedure 12.  Oppo. Mot. Dismiss 3; *see also Moua*, 2012 WL 370570 (addressing issue on Rule 15 motion); *Willner*, 35 F. Supp. 3d 1116 (addressing on motion for summary judgment).

United States District Court
Northern District of California

1   broad terms asserted by Cinemark.  It argues that plaintiffs' PAGA claims "would be

2   unmanageable as a representative action," Mot. Dismiss 17, because plaintiffs cannot show any

3   identity of interest with those they seek to represent under Labor Code § 2699(g)(1) and 2699(i).

4   *Id.*

5          I disagree with the contention of Cinemark that the manageability requirement should be

6   imposed on PAGA claims by analogizing them to claims in unfair competition or pattern-or-

7   practice discrimination cases.  Mot. Dismiss 17-18.  This argument cannot bear the weight

8   Cinemark puts on it, and other courts have rejected similar arguments.  *See*, e.g., *Plaisted v. Dress*

9   *Barn, Inc.*, No. 2:12-CV-01679-ODW, 2012 WL 4356158, at *2 (C.D. Cal. Sept. 20, 2012);

10  *Alcantar v. Hobart Serv.*, No. ED CV 11-1600 PSG, 2013 WL 146323, at *3-4 (C.D. Cal. Jan. 14,

11  2013).  In addition to the inherent differences between PAGA suits and unfair competition and

12  pattern-or-practice suits, the cases to which Cinemark cites address manageability at later stages of

13  the lawsuit.  *See Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal. App. 3d 699, 720-21 (Ct.

14  App. 1989), *reh'g denied and opinion modified* (Nov. 2, 1989) (resolving pretrial motion); *S. Bay*

15  *Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 874-75 (1999) (resolving

16  motion brought after the close of evidence); *E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 462

17  (S.D.N.Y. 2011) (resolving on motion for summary judgment); *E.E.O.C. v. CRST Van Expedited,*

18  *Inc.*, 611 F. Supp. 2d 918, 952-54 (N.D. Iowa 2009) (same).

19          There is no per se rule that should be applied to PAGA claims that do not meet Rule 23

20  requirements.  However, when the evidence shows, as it does here, that numerous individualized

21  determinations would be necessary to determine whether any class member has been injured by

22  Cinemark's conduct, then allowing a representative action to proceed is inappropriate.

23          In *Ortiz v. CVS Caremark Corp.*, the court dismissed a PAGA claim because it was

24  unmanageable.  No. C-12-05859 EDL, 2014 WL 1117614, at *3-4 (N.D. Cal. Mar. 19, 2014).  It

25  did so because of the "multitude of individualized assessments" that case would have required.  *Id.*

26  at *4.  Several other courts have adopted the reasoning of *Ortiz*, and dismissed PAGA claims

27  where there is a large number of allegedly aggrieved individuals that would require individual

28  assessments.  *See Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA PJWX, 2014 WL 5904904, at

*3 (C.D. Cal. Nov. 10, 2014) (same); *Bowers v. First Student, Inc.*, No. 2:14-CV-8866-ODW EX, 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015).   Similarly, *Stafford v. Dollar Tree Stores, Inc.* addressed a motion to bifurcate individual and representative PAGA claims.  It found that "in light of the number of potential aggrieved employees, judicial economy favors deferring the representative portion of the PAGA claim" until the named plaintiff could first establish that he was an aggrieved employee with the right to bring the action.  No. 2:13-CV-1187 KJM CKD, 2014 WL 6633396, at *2-4 (E.D. Cal. Nov. 21, 2014).  Thus, *Stafford* expressed concerns about manageability related to the numerous "aggrieved employees" that the plaintiff sought to represent.

Related to the argument on unmanageability is plaintiffs' failure to adequately identify the aggrieved individuals.  *See* Reply Mot. Dismiss at 5-7 (Dkt. No. 106).[15]  Several courts have dismissed representative PAGA claims on this basis.  In *Chie v. Reed Elsevier, Inc.*, the Hon. Edward Chen in this District dismissed PAGA claims for failure to identify the aggrieved individuals from a pool of roughly 300 employees.  No. C-11-1784 EMC, 2011 WL 3879495, at *4 (N.D. Cal. Sept. 2, 2011).  There, the plaintiffs did not "provide any other description of the aggrieved employees" other than that they could be ascertained by reviewing payroll records.  *Id.*  Judge Chen found that specificity as to the aggrieved employees is particularly important in representative actions, and that the information provided did "not give Defendants fair notice as to what the scope of the PAGA claim is." *Id.*

In *Jeske v. Maxim Healthcare Services, Inc.*, the defendants objected to pleadings of PAGA violations because the plaintiff did not sufficiently define the "aggrieved employees."  No. CV F 11-1838 LJO JLT, 2012 WL 78242, at *13 (E.D. Cal. Jan. 10, 2012).  The court agreed, finding that the complaint failed "to identify how particular aggrieved employees were subject to particular violations" and that the plaintiff had failed "to justify the complaint's overly broad

---

[15] Cinemark cites to "at least 10 Federal Courts" that "dismissed PAGA claims either because they couldn't identify the aggrieved individuals or because the claims would be unmanageable."  Tr. 28:1-18 (Dkt. No. 114).  Cinemark's statement is misleading.  Many of the cases it lists either do not discuss PAGA at all or do not stand for the proffered conclusions.  However, a few of these cases that I discuss do support Cinemark's position.

1  scope of aggrieved employees." *Id.* Therefore, it refused "to sanction PAGA claims for

2  imprecisely defined aggrieved employees." *Id.*

3  There are more than 10,000 class members in this case. Notice of Removal ¶ 22 (Dkt. No.

4  1). As described above, many of them worked for managers who followed Cinemark's compliant

5  wage and hour policy, and plaintiffs offer no easy way to identify those who may actually be

6  aggrieved. The complaint states only that "Plaintiff (and each and every other Class Member) are

7  each an "aggrieved employee," as defined by California Labor Code § 2699(c)." *Amey* Compl. ¶

8  62; *see also Brown* Compl. ¶ 72 (not defining aggrieved employees). Similar to the cases cited

9  above, the "aggrieved employees" are not defined with sufficient particularity to give Cinemark

10  notice of the scope of the PAGA claim, and it would require too great a number of individualized

11  assessments to determine the scope. Accordingly, the PAGA claims are dismissed. If plaintiffs

12  wish to seek leave to amend the non-wage statement PAGA claims, they may do so in accordance

13  with the procedure described in the Conclusion and explain why amendment would not be futile

14  and prejudicial to Cinemark.

15  **III. WAGE STATEMENT CLAIMS**

16  As discussed is Section II. A above, Cinemark objects to plaintiffs' wage statement claims

17  because the operative complaints did not state a claim for "direct" wage statement violations, but

18  rather for "derivative" claims based upon Cinemark's failure to pay employees for missed meal

19  and rest breaks and for off-the-clock work. Mot. J. Pleadings 1-2. It asserts that plaintiffs

20  acknowledged that their claims were derivative and that the new claims deprive it of fair notice.

21  *Id.* at 11-12. Cinemark denies having any notice of the direct claim under 226(a)(9). Reply Mot.

22  J. Pleadings 11-12 (Dkt. No. 104).

23  Cinemark moved both for judgment on the pleadings on the section 226 claim and for

24  denial of class certification on this ground. [16] There are different standards that apply to each

25  motion.

26

27  _____

28  [16] Cinemark requests judicial notice of a number of documents in support of this motion. Dkt. No.
97. Because these documents are filed in the docket of this case, the request for judicial notice is
GRANTED.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    As an initial matter, I address the parties' dispute about the standard for granting a Rule

2    12(c) motion after substantial discovery has taken place, as in this case.  Oppo. Mot. J. Pleadings 2

3    (Dkt. No. 103).  The plaintiffs cite dicta in *Grajales v. Puerto Rico Ports Authority* for the

4    proposition that "[a]pplying the [Rule 12(b)(6)] plausibility standard to a complaint after

5    discovery is nearly complete would defeat [the] core purpose" of Rule 12(b)(6) in avoiding

6    unnecessary discovery.  682 F.3d 40, 46 (1st Cir. 2012); Oppo. Mot. J. Pleadings 2.  One district

7    court within the Ninth Circuit has discussed *Grajales* and adopted its reasoning to deny a Rule

8    12(c) motion because it was brought too late in the proceedings.  *See Perez v. Oak Grove*

9    *Cinemas, Inc.*, No. 3:13-CV-00728-HZ, 2014 WL 1796674, at *3-4 (D. Or. May 5, 2014).

10    I am unaware of any other court within the Ninth Circuit besides *Oak Grove Cinemas* that

11    has adopted the reasoning of *Grajales*.  Neither case is binding on me.  Other courts in this district

12    have rejected similar arguments, finding that a "claim that a Rule 12(c) motion is not appropriate

13    where there has been substantial discovery does not appear to be supported by Rule 12(c)").  *Perez*

14    *v. Wells Fargo & Co.*, No. C 14-0989 PJH, 2014 WL 6997618, at *6 (N.D. Cal. Dec. 11, 2014).  I

15    agree with this reasoning.  Rule 12 provides that parties may move for judgment on the pleadings

16    "[a]fter the pleadings are closed – but early enough not to delay trial."  FED. R. CIV. P. 12(c).  I

17    will consider Cinemark's Rule 12 motion and apply the same standard that is uniformly used in

18    resolving Rule 12(c) motions – failure to state a claim under Rule 12(b)(6).

19    Cinemark argues that the operative complaints do not plead a violation of Labor Code §

20    226(a)(9) for failure to provide accurate overtime rates on wage statements.[17]  Mot. J. Pleadings 8.

21    The plaintiffs respond that the "requirements to state a Section 226 claim are minimal" and that

22    they have included sufficient information in their complaints.  Oppo. Mot. J. Pleadings 10.

23    Brown's third cause of action pleads a violation of California Labor Code § 226(a) for

24    "non-compliant wage statements."  It states that "[d]efendants have intentionally and willfully

25

26    _____

27    [17] I reject the plaintiffs' contention that the defendants waived the defense of failure to state a
claim by failing to raise it in their prior motions.  Here, the failure to exhaust defense is in essence
28    a failure to state a claim defense, which may be raised by a motion under 12(c).  *See Ovieda*, 2013
WL 3887873, at *2.

United States District Court
Northern District of California

1  failed to provide employees with complete and accurate wage statements.  The deficiencies

2  include, among other things, the failure to state all hours worked as a result of failing to record and

3  state the hours Plaintiffs and class members worked off-the-clock."  *Brown* Compl. ¶ 58.  It

4  continues to allege that specifically, the plaintiffs "were denied both their legal right to receive and

5  their protected interest in receiving, accurate, itemized wage statements under California Labor

6  Code section 226(a).  In addition, because Defendants failure to provide the accurate number of

7  total hours worked on wage statements, Plaintiffs have been prevented by Defendants from

8  determining if all hours worked were paid and the extent of the underpayment."  *Id.* ¶ 60.

9           Amey's third cause of action provides that "[d]efendant has failed to provide timely,

10  accurate itemized wage statements to Plaintiff and Class Members in accordance with California

11  Labor Code § 226.  Plaintiff is informed and believes and, on that basis, alleges that none of the

12  statements provided by Defendant accurately reflected actual gross wages earned, net wages

13  earned, or the appropriate deductions for any Class Member."  *Amey* Compl. ¶ 49.

14           Purely as a matter of pleading, I agree with plaintiffs.  Unlike the cases cited by Cinemark,

15  including my prior orders in *Khan v. K2 Pure Solutions, L.P.*, No. 12-CV-05526-WHO, 2013 WL

16  6503345, at *8 (N.D. Cal. Dec. 4, 2013) and *Lefevre v. Pac. Bell Directory*, No. 14-CV-03803-

17  WHO, 2014 WL 5810530, at *4 (N.D. Cal. Nov. 7, 2014), the complaint in this case is not devoid

18  of any facts.  Instead, plaintiffs allege that employees worked off-the-clock and that Cinemark

19  failed to correctly record all hours worked on wage statements, including those worked off-the-

20  clock.  *Brown* Compl. ¶ 58.  This is a factual assertion that goes beyond mere recitation of the

21  statutory language, so I will not dismiss this claim for that reason.  *See Lefevre*, 2014 WL

22  5810530, at *2-3.

23           That derivative wage statement claim that plaintiffs made in their complaints, however,

24  would fail certification for the reasons previously discussed – there are no common questions and

25  individualized determinations would predominate.  That is no longer the theory plaintiffs wish to

26  pursue.  Instead, they wish to assert a "direct" wage statement claim based on the failure of

27  Cinemark's wage statements to accurately reflect the rate of premium pay.  Oppo. Mot. J.

28  Pleadings 10-11.  Note that this is not a claim that overtime rates were calculated incorrectly for

1    any class member and not paid, but only that the wage statement itself repeated the same rate for

2    premium pay as regular hours.  Mot. Cert. 4.  That claim is not currently alleged.

3            Plaintiffs argue that Cinemark had notice of their intent to certify the "direct" wage

4    statement claim because it was pursued by Cinemark in depositions and in other written discovery,

5    and pursued by plaintiffs in "extensive written discovery," in their deposition of Cinemark's

6    corporate designees, and in their motion for class certification.  Oppo. Mot. J. Pleadings 13-14.

7    Their argument is flawed.

8            Cinemark's actual notice of the claim would not necessarily absolve plaintiffs of their

9    failure to properly allege the direct wage statement claim.  But more importantly, plaintiffs'

10   arguments that defendants in fact had notice that they intended to pursue the direct wage statement

11   claim are misleading.  That plaintiffs conducted discovery regarding the "direct" claim and that

12   they brought it in their motion for class certification does not indicate that Cinemark knew that

13   plaintiffs intended to pursue a claim not alleged in the complaints.  Evidence about Cinemark's

14   records of overtime work is germane to other pleaded claims, such as failure to compensate for

15   off-the-clock work.

16           In addition, the facts contradict plaintiffs' argument that Cinemark's knowledge of the

17   direct wage statement claims is reflected in its own discovery.  Cinemark's deposition questions

18   did not directly relate to the failure to properly list overtime rates on wage statements, but asked

19   more generally if witnesses noticed any errors or had any confusion about their wage statements.

20   *See* Oppo. Mot. J. Pleadings 15; Smith Depo. 222:2-223:3 (discussing the fact that Cinemark does

21   payroll in-house and that it was responsible for mistakes on pay stubs).  This is consistent with

22   Cinemark's position that "[p]laintiffs had a derivative wage statement claim that required proof of

23   injury so, of course, Cinemark's counsel questioned Plaintiffs about that claim."  Reply Mot. J.

24   Pleadings 12.

25           *Holak v. K Mart Corp.,* No. 1:12-CV-00304 AWI, 2014 WL 2565902, at *27 (E.D. Cal.

26   June 6, 2014) *report and recommendation adopted in part sub nom.* No. 1:12-CV-00304-AWI,

27   2014 WL 4930762 (E.D. Cal. Sept. 30, 2014), supports dismissal of this claim.  There, the court

28   addressed the same issue involving pleadings of wage statement violations.  The plaintiff had

United States District Court
Northern District of California

alleged nearly identical violations of 226(a) based upon the defendants' "failure to record off-the-clock work." *See id.* at 27-28. In its motion for class certification, the plaintiff sought to certify a wage statement claim based upon the defendants' failure state the proper overtime rate on some pay statements. *Id.* at *27. The court concluded:

> The manner in which the complaint was phrased gave Defendant no notice of claims that the overtime rate was incorrectly stated separate and apart from incidents relating to failure to account for hours worked after clocking out. As Plaintiff did not plead the claim in her complaint, it would be inappropriate to certify a class based on the claim.

*Id.* at *28.

This reasoning is persuasive. Not only are the asserted claims in this case identical to those asserted in *Holak*, but plaintiffs' wage statement claims in the operative complaints are derivative of their direct claims. To allow the plaintiffs, without amendment, to convert their derivative wage statement claim to a direct claim on a theory alleged nowhere in the complaint would be unfair to the defendants and improper as a matter of pleading.

At oral argument, plaintiffs asked leave to amend their complaint to assert the direct wage statement claim. It is quite late in this case to allow amendment, and I am concerned about the prejudice to Cinemark if I allowed amendment, as well as the ability of plaintiffs to plead a plausible wage statement claim under section 226 given the type of mistake alleged. I will allow plaintiffs to file a 15-page brief by June 2, 2015 that addresses the standard of review for amending a class claim after certification has been denied, any argument concerning prejudice, and how discovery thus far would support an amended claim. Plaintiffs should attach a proposed amended complaint to their amended claim with sufficient detail to meet all of the requirements of a section 226 claim. If they wish to amend the PAGA claims discussed in the previous section, they should include argument on that as well. Cinemark may respond with a 15-page opposition by June 12, 2015. No reply brief is allowed. I will set a hearing if I think further argument would be valuable.

## CONCLUSION

Because the plaintiffs have not established that Cinemark has a uniform policy of failing to

provide employees with meal or rest breaks, failing to provide reporting time pay, or failing to pay employees for all time worked off-the-clock, they cannot establish any questions of fact that are common to the proposed class. Instead, individualized determinations that will vary by manager and by theater predominate in this action. Therefore, the plaintiffs cannot meet the commonality or predominance requirements of Rule 23. In addition, plaintiffs' wage statement claims cannot be certified because they failed to properly plead violations of Labor Code § 226(a)(9) as a "direct" wage statement claim. All of plaintiffs' claims that are derivative of the ones discussed are also not suitable for class certification.

For the above reasons, plaintiffs' motion for class certification is DENIED. Cinemark's motions for judgment on the pleadings and to deny class certification are GRANTED in part and DENIED in part. As described in the preceding section, if plaintiffs wish to amend their wage statement claims or their non-wage statement PAGA claims, they may file a 15-page brief that addresses the Court's concerns, accompanied by a proposed amended complaint, by June 2, 2015. Cinemark may file a 15-page opposition brief by June 12, 2015. No reply brief is allowed.

**IT IS SO ORDERED**.

Dated: May 13, 2015



WILLIAM H. ORRICK
United States District Judge