Raul Perez (SBN 174687)
Raul.Perez @capstonelawyers.com
Robert Drexler (SBN 119119)
Robert.Drexler@capstonelawyers.com
Moly DeSario (SBN 230763)
Molly.DeSario@capstonelawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiff Silken Brown

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILKEN BROWN, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"), <br><br> Plaintiff, <br><br> vs. <br><br> CINEMARK USA, INC., a Texas corporation; CENTURY THEATRES, INC., a California corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.:  3:13-cv-05669-WHO <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:      March 13, 2019 <br> Time:      2:00 p.m. <br> Place:     Courtroom 2 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 13, 2019 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Plaintiff Silken Brown will, and hereby does, move this Court to:

1. Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement and Release of Claims, attached as Exhibit 1 to the Declaration of Raul Perez;

2. Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

3. Appoint Simpluris, Inc. as the Settlement Administrator; and

4. Set a hearing date for final approval of the settlement.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Joint Stipulation of Class Action Settlement and Release of Claims; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated:  February 6, 2019

Respectfully submitted,

CAPSTONE LAW APC

By: /s/ Robert J. Drexler, Jr.
Raul Perez
Robert J. Drexler, Jr.
Moly DeSario
Jonathan Lee

Attorney for Plaintiff Silken Brown and the Class

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................... 1

II.  FACTS AND PROCEDURE .................................................................................. 2

    A.  Overview of the Litigation .............................................................................. 2

    B.  The Parties Settled at a Mandatory Settlement Conference ............................ 5

    C.  The Parties Conducted a Thorough Investigation of the Factual and
           Legal Issues ..................................................................................................... 5

    D.  The Proposed Settlement Fully Resolves Plaintiff's Wage Statement
           Claim ............................................................................................................... 7

          1.  Composition of the Settlement Class ................................................... 7

          2.  Settlement Consideration ...................................................................... 7

          3.  Release by the Settlement Class ........................................................... 7

III.  ARGUMENT ........................................................................................................ 8

    A.  The Proposed Class Action Settlement Should Receive Preliminary
           Approval ......................................................................................................... 8

    B.  The Class Representative and Class Counsel Will Adequately Represent
           the Class ......................................................................................................... 9

    C.  The Settlement, as the Product of Arm's-Length Negotiations, is Entitled
           to a Presumption of Fairness ........................................................................ 10

    D.  The Relief Provided by the Settlement is Fair and Reasonable .................... 10

          1.  The Class Settlement Amount is Within the Range of
              Reasonableness ................................................................................... 11

          2.  The Settlement Provides for an Equitable Method of Allocating
              Relief to Class Members ..................................................................... 17

          3.  The Court Should Preliminarily Approve the Negotiated
              Attorneys' Fees and Costs .................................................................. 18

    E.  There Are No Obvious Deficiencies with the Settlement or Preferential

Treatment to Certain Class Members ...................................................................... 19

F.    The Court Should Approve the PAGA Component of the Settlement ........................ 20

G.    The Court Should Preliminarily Approve the Negotiated Class
Representative Enhancement Payment ...................................................................... 21

H.    The Proposed Class Notice Adequately Informs Class Members About
the Case and Proposed Settlement ............................................................................ 22

I.    Class Action Fairness Act Disclosures Will Be Issued Timely By
Defendants. .............................................................................................................. 24

IV.    CONCLUSION .................................................................................................................... 24

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008)..................................................................................................................22

*Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D. Cal. July 21, 2014)..................................................................................................................17

*Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014)....................................22

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...................................9

*Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030 (N.D. Cal. 2016).................................................16

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)........................................................10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)..........................................................23

*Fleming v. Covidien*, 2011 WL 7563047 (C.D. Cal. 2011) .................................................16

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ...........................................................9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................9, 10

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)..........................................................................................21

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008)....................................................10

*In Re Armored Car Antitrust Litig.*, 472 F. Supp. 1357 (N.D. Ga. 1979) ................................17

*In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla.1972).................................17

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ....................12

*In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ....................12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 ...........................................................22

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708 (E.D. Pa. 2014) ..........................................................................................11

*In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078 (N.D. Cal. 2007)...............................11

*In re Volkswagen (Clean Diesel) Mktg., Sales Practices, and Prods. Liab. Litig.*, 2016

WL 4010049 (N.D. Cal. July 26, 2016) ..........................................................................10, 11

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002)...................................17

*Int'l Union of Operating Engineers-Employers Canst. Industry Pension, Welfare and*

*Training Trust Funds v. Karr*, 994 F.2d 1426 (9th Cir. 1993) ............................................. 8

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ........................................ 11

*Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS 122873 (N.D. Cal. Aug. 28, 2013) ........................ 15

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ........................... 19

*Matter of Continental Illinois Securities Litig.*, 962 F.2d 566 (7th Cir. 1992) ....................... 22

*McAtee v. Capital One, F.S.B.*, 479 F.3d 1143 (9th Cir. 2007) ........................................... 19

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 ((S.D. Cal.

Aug. 4, 2016) ................................................................................................. 11

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............................... 12

*Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) ......................................................... 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................................. 12

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ........................................... 12

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................... 22

*Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D.

Cal. Sept. 29, 2010)........................................................................................... 22

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)..................................... 11

*Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb.

25, 2008) ..................................................................................................... 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................... 19

*York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239 (C.D. Cal. Oct. 29, 2013)......................... 22

## State Cases

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)..................................................... 19

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) ................................................... 19

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) ...................................................... 19

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ............................................................ 21

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) .................................................................................. 19


**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a)(4) ............................................................................................................ 10

Fed. R. Civ. P. 23(c)(2) ........................................................................................................22, 23

Fed. R. Civ. P. 23(e)(1)(A) ........................................................................................................ 8


**STATE STATUTES**

Cal. Lab. Code § 226(e) ............................................................................................................ 15

Cal. Lab. Code § 2699............................................................................................................13, 14


**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) .............................................. 11

*Manual for Complex Litigation*, Fourth (Fed. Judicial Center 2004) ....................................9, 23

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ........................................ 23

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before

    Trial, California & 9th Cir. Editions (The Rutter Group, 2015) ........................................ 19

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:*

    *An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, March 2004 .............. 19

*William B. Rubenstein et al.*, *Newberg on Class Actions* (4th ed. 2008) ................................. 22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Silken Brown seeks preliminary approval of the Joint Stipulation of Class Action Settlement and Release of Claims,[1] which, if approved, would provide valuable monetary relief for just under 6,000 current and former employees of Defendants Cinemark USA, Inc. and Century Theatres, Inc. (collectively "Defendants" or "Cinemark") (collectively with Plaintiff, the "Parties").

The basic terms of the Settlement provide for the following:

(1)     A Settlement Class defined as:  All current and former non-exempt employees of Cinemark's California theaters who worked as an usher or concession worker from December 3, 2011 until July 31, 2014, or in any other non-exempt position from July 25, 2012 until July 31, 2014, and who were paid overtime compensation during at least one pay period.  (Settlement Agreement ¶ E.)

(2)     An all inclusive and non-reversionary Class Settlement Amount of $2,900,000.  The Class Settlement Amount includes:

(a)     A Net Settlement Amount of approximately $1,768,333 (calculated as the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the payment to the California Labor and Workforce Development Agency ["LWDA"], and the Class Representative Enhancement Payment), which will be allocated to all Class Members on a pro-rata basis according to the number of wage statements reflecting overtime issued by Cinemark to Class Members during the Class Period.  **The Entire Net Settlement Amount will be paid to all Class Members who do not opt out of the Settlement Class, and without the need to submit claims for payment.**

(b)     Attorneys' fees not to exceed one-third of the Class Settlement Amount (or $966,667) and litigation costs and expenses not to exceed $50,000, to Capstone Law APC ("Class Counsel").

---

[1] Hereinafter "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

(c)    Settlement Administration Costs, currently estimated at $30,000 (and not to exceed $40,000), to be paid to the jointly selected settlement administrator, Simpluris, Inc.

(d)    A $75,000 payment to the LWDA pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

(e)    A class representative Enhancement Payment of $10,000 to Silken Brown for her services on behalf of the Settlement Class.

The relief negotiated on behalf of the Class is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from the Honorable Joseph C. Spero, and the Settlement confers substantial benefits to Class Members. This relief—averaging $295 per Class Member—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk that the class is decertified or of Defendants prevailing at trial or on appeal.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval under federal law and falls within the range of reasonableness. Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation

The *Brown* action was filed in San Francisco County Superior Court on December 3, 2012, Case No. CGC-12-526557. Defendants removed the action to this Court on August 29, 2013. The operative Second Amended Complaint in *Brown* brings the same claims as the *Amey* action,[2] in addition to a failure to pay minimum wage claim. On March 14, 2014, this Court consolidated the actions pursuant to

---

[2] Plaintiff Amey filed this action in Los Angeles County Superior Court on July 25, 2013. (Dkt. No. 1, Ex. A.) Amey alleged claims under the California Labor and Business & Professions Codes for: (1) failure to provide meal and rest periods, (2) failure to pay all wages, (3) failure to provide accurate itemized wage statements, (4) failure to pay wages on termination, (5) unfair business practices, and (6) a claim for civil penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). (*Id.*) On August 29, 2013, Defendants removed the *Amey* action to federal court. (Dkt. No. 1.) It was then transferred to this Court.

1   a stipulation. (Dkt. No. 25.)

2       On January 21, 2015, Plaintiffs in *Amey* and *Brown* filed a motion for class certification based

3   on, among other things, the wage statement claim at issue in the present motion. (Dkt. No. 84.) The same

4   day, Defendants filed a motion to deny class certification and a motion to dismiss Plaintiffs' claims under

5   the California Labor Code Private Attorneys General Act (sections 2698, *et seq.* or "PAGA"). (Dkt. No.

6   82.)

7       On March 20, 2015, Defendants filed a motion for judgment on the pleadings, seeking judgment

8   against Plaintiffs' direct wage statement claim under Labor Code section 226 and as to the plaintiffs'

9   PAGA claim to the extent it was based on the direct wage statement claim. (Dkt. No. 95.)

10      On May 13, 2015 the Court denied Plaintiffs' motion for class certification, granted Defendants'

11  motion to dismiss PAGA claims, and granted Defendants' motion for judgment on the pleadings as to

12  the direct wage statement claim. (Dkt. No. 115.)

13      On October 28, 2015, Defendants filed a motion for summary judgment as to Plaintiffs'

14  individual claims. (Dkt. No. 128.) The motion was heard on December 2, 2015 and the parties agreed to

15  settle the remaining individual claims and submit on the Court's tentative order granting summary

16  judgment in part. (*See* Dkt. No. 135.) As part of the settlement, the parties expressly carved out and

17  preserved Plaintiffs Brown and De La Rosa's right to appeal the denial of class certification and Plaintiff

18  Brown's right to appeal dismissal of the representative PAGA claims, pursuant to *Narouz v. Charter*

19  *Commc'ns, LLC*, 591 F.3d 1261 (9th Cir. 2010). (*See* Dkt. No. 170 at 3:27-4:3.) The pertinent language

20  in Ms. Brown's settlement agreement provides:

21          Preservation of Appellate Rights. The Parties agree that Plaintiff will retain her
            personal stake and continued financial interest in the advancement of the class
22          claims and Private Attorneys General Act ("PAGA") claims alleged in the
            Second Amended Complaint in the Action, including but not limited to her
23          interest in obtaining enhancement awards and penalties by reason of her potential
            role as class representative and PAGA representative, as well as a continued
24          claim (disputed by Defendants) for attorneys' fees and costs. The Parties
            acknowledge, as a material part of this agreement, that this provision complies
25          with *Narouz v. Charter Communications, LLC*, 591 F.3d 1261 (9th Cir. 2010)
            for the purpose of maintaining rights to appeal. The Parties acknowledge, as a
26          material part of this Agreement, that Defendants reserve all rights to oppose any
            appeal, except that Defendants expressly waive the right to oppose an appeal by
27          Plaintiff on the grounds that she either lacks standing because of this Agreement
            or the appeal is moot because of this Agreement.

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Plaintiff Amey dismissed all of his claims with prejudice as part of his settlement, without a

2    preserving any of the rights described above, and is no longer a party to this action.

3    On January 12, 2016, this Court issued its order granting in part, and denying in part, summary

4    judgment, pursuant to the Parties' stipulation. (Dkt. No. 150.) On February 4, 2016, the Court issued its

5    final judgment, dismissing Plaintiffs' individual claims "pursuant to the parties' settlement" and

6    expressly subject to preservation of Plaintiffs' agreed-upon appellate rights. (Dkt. No. 154.)

7    Consistent with the Settlement Agreement, on March 4, 2016, Plaintiffs filed a notice of appeal

8    and appealed the denial of class certification and dismissal of PAGA claims as to the direct wage

9    statement claim only. (Dkt. No. 156.) Defendants filed a motion to dismiss the appeal on July 31, 2017,

10   arguing that Plaintiffs' voluntary settlement of some of their claims destroyed appellate jurisdiction in

11   light of *Microsoft Corp. v. Baker*, 582 U.S. __, 137 S. Ct. 1702 (2017). (*See* Dkt. No. 160.) The Ninth

12   Circuit denied the motion to dismiss appeal, holding that, unlike in *Baker*, Plaintiffs here were not

13   intending to sidestep Rule 23 when dismissing their claims, and continued to litigate their remaining

14   individual claims after the denial of class certification. (Dkt. No. 160.) Thus, "the resolution of this case

15   was not a unilateral dismissal of claims, but a mutual settlement for consideration reached by both parties

16   which expressly preserved certain claims for appeal." (*Id.*)

17   On December 7, 2017, the United States Court of Appeals for the Ninth Circuit issued its

18   opinion reversing and remanding the decision of the district court as to the direct wage statement claim

19   and the PAGA claim based on the direct wage statement claim. (Dkt. No. 159.) The court held that, (1)

20   "[b]ecause the pleadings put Defendants on sufficient notice of California Labor Code § 226(a)

21   violations, whether direct or derivative, Plaintiffs' pleadings merit a Rule 23 analysis for their direct

22   wage claims"; and (2) with respect to the direct wage statement PAGA claim, "Brown's PAGA letter

23   pleaded facts and theories sufficient to put Defendants and the California Labor and Workforce

24   Development Agency on notice of potential investigation, which satisfies the policy goal of California

25   Labor Code § 2699.3(a) . . . ." (*Id.*)

26   On January 19, 2018, the Ninth Circuit denied Defendants' petition for rehearing of the appeal

27   *en banc*. On January 29, 2018, the Ninth Circuit issued its mandate.

28   On April 18, 2018, Plaintiff Brown moved for class certification of the direct wage statement

claim pursuant to Rule 23, as instructed by the Ninth Circuit.[3] Plaintiff Brown moved to certify a class of all current and former non-exempt employees of Cinemark's California theaters since December 3, 2011 who were paid overtime compensation during at least one pay period. Mot. Cert. 2 (Dkt. No. 176).

On August 17, 2018, the Court granted Brown's motion and certified the wage statement class. (Dkt. No. 182.)  On August 22, 2018, the district court limited the class definition to a class of ushers and concession workers for the period beginning December 3, 2011, and a class of other non-exempt employees for the period beginning July 25, 2012.  Pursuant to a stipulation by the Parties, on September 7, 2018, the class definition was amended further such that the class certified is: "all current and former non-exempt employees of Cinemark's California theaters who worked as an usher or concession worker from December 3, 2011 until July 31, 2014, or in any other non-exempt position from July 25, 2012 until July 31, 2014, and who were paid overtime compensation during at least one pay period."  *See* Order, Dkt. 189. On October 30, 2018, Mario De La Rosa was dismissed from the action with prejudice.

**B.     The Parties Settled at a Mandatory Settlement Conference[4]**

On October 31, 2018, Plaintiff, her counsel, Defendants, and Defendants' counsel appeared before the Honorable Joseph C. Spero, United States Magistrate Judge, for a judicial settlement conference. At the judicial settlement conference and as the result of arm's length negotiations, the Parties reached an agreement to settle the class and PAGA claims asserted by Brown. Although the Parties entered a binding settlement and executed a Memorandum of Agreement ("MOU") on October 31, 2018, the Parties agreement provided that the MOU would be further memorialized in a formal written agreement (i.e., the Settlement Agreement filed herewith). (Perez Decl. ¶ 14.)

**C.     The Parties Conducted a Thorough Investigation of the Factual and Legal Issues**

The Settlement is the product of informed negotiations following extensive investigation by Class Counsel. During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law. The investigation entailed the

---

[3] Brown's proposed class consisted of all current and former non-exempt employees of Cinemark's California theaters since December 3, 2011 who were paid overtime compensation during at least one pay period. Mot. Cert. 2 (Dkt. No. 176).

[4] On January 15, 2015, the parties engaged in a mediation before Michael Loeb, in an effort to settle all claims then pending in the case including the wage statement claim. The mediation was not successful.

exchange of information pursuant to formal and informal discovery methods, including interrogatories, requests for admission, and document requests. In the course of written discovery, Class Counsel received and analyzed over a thousand pages of documents, including Cinemark's written policies regarding the claims at issue, and exemplar wage statements and information on the number of wage statement containing the allegedly incorrect overtime rates. (Perez Decl. ¶ 15.)

In addition to written discovery, the Parties took a total of 20 depositions, including the depositions of Plaintiffs Brown, De La Rosa and Amey, Cinemark's Rule 30(b)(6) designee Senior Vice President of Human Resources (Brad Smith), Plaintiff's expert (Dr. Robert Fountain, Ph.D.), and fourteen Class Members who submitted declarations in support of Plaintiffs' original motion for class certification (Alexander Morales, Amber Lopez, Ariana Kohler, Diego Oseguedo Rivera, Jamieson Poncia, Jessie Roberson, Karina Melendez, Michael Johnson, Sasha Burnside, Tabitha Krick, Kyle Cott, Nathan Garrett, Brooke Goniwicha, and Rachel Rodgers). (Perez Decl. ¶ 16.)

Overall, Class Counsel performed an exhaustive investigation into the claims at issue, which included:  (1) determining Plaintiff Brown's suitability as a putative class and PAGA representative through interviews, background investigations, and analyses of her employment files and related records; (2) evaluating all of Plaintiff Brown's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing Defendants' labor policies and practices; (5) analyzing exemplar wage statements; (6) deposing Defendants' 30(b)(6) witness;  (7) defending Plaintiffs' depositions and the depositions of fourteen Class Members who submitted declarations in support of Plaintiffs' original motion for class certification; (8) researching settlements in similar cases; (9) conducting a discounted valuation analysis of claims; (10) drafting the mediation brief and Mandatory Settlement Conference Statement; (11) participating in mediation and a Mandatory Settlement Conference; and (12) finalizing the Settlement Agreement. The extensive document and data exchanges have allowed Plaintiff's Counsel to appreciate the strengths and weaknesses of the claims alleged against Defendants and the benefits of the proposed Settlement. (Perez Decl. ¶ 17.)

**D.      The Proposed Settlement Fully Resolves Plaintiff's Wage Statement Claim**

**1.      Composition of the Settlement Class**

The Settlement Class is the Wage Statement Class certified by this Court: All current and former non-exempt employees of Cinemark's California theaters who worked as an usher or concession worker from December 3, 2011 until July 31, 2014, or in any other non-exempt position from July 25, 2012 until July 31, 2014, and who were paid overtime compensation during at least one pay period. (Settlement Agreement, Definitions ¶ E.) The number of Class Members will not exceed 6,000 (in order of date of hire). (*Id.*)

**2.      Settlement Consideration**

Plaintiff and Defendants have agreed to settle the wage statement claim in exchange for the Class Settlement Amount of $2,900,000, all inclusive and non-reversionary.  The Class Settlement Amount includes: (1) settlement payments to Participating Class Members; (2) $966,667 in attorneys' fees and up to $50,000 in litigation costs/expenses to Class Counsel; (3) a $75,000 payment to the LWDA; (4) Settlement Administration Costs (currently estimated at approximately $30,000);[5] and (5) a Class Representative Enhancement Payment of $10,000, to Silken Brown for her service on behalf of the Settlement Class and for a general release of all claims arising out of her employment. (Settlement Agreement, Terms, ¶¶ B, F, K-M.)

Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA, Settlement Administration Costs, and the Class Representative Enhancement Payments, the Net Settlement Amount will be distributed to all Participating Class Members.  Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid to Participating Class Members without the need to submit claims for payment.  (*Id.* at ¶ E.)

**3.      Release by the Settlement Class**

In exchange for the Class Settlement Amount, Class Members who do not opt out will agree to release the Released Claims, which are defined as:

---

[5] If settlement administration costs exceed the estimate, the excess will be paid from the Class Settlement Amount prior to distribution of the Net Settlement Amount to participating Class Members, subject to Court approval.

1
2
3
4
5
6
7
8
9

> All claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, whether in tort, contract, statute, rule, ordinance, order, regulation, or otherwise, whether for economic damages, non-economic damages, restitution, civil or statutory penalties, wages, liquidated damages, interest or attorneys' fees or costs, arising from the same set of operative facts alleged in the Complaints litigated in this case (i.e. the Second Amended Complaint filed by Plaintiff Brown and the Complaint filed by Joseph Amey (collectively the "Operative Complaints")), for direct and derivative wage statement violations (including claims for failure to keep accurate records and failure to provide accurate wage statements), and PAGA penalties associated with such alleged wage statement violations (the "PAGA Claims"). The Settled Claims specifically include any and all claims to recover civil penalties, statutory penalties, or damages under Labor Code § 226 or Labor Code § 226.3 and the PAGA for any alleged violation of Labor Code § 226, and any claims under Business and Professions Code § 17200 and all applicable Industrial Wage Commission Wage Orders related to direct or derivative wage statement claims as alleged in the Operative Complaints.

10  (Settlement Agreement ¶ I.Y.) The Released Claims are those that accrued during the applicable

11  Settlement Period. (*Id.*)

12  Accordingly, the release is narrowly tailored to the claims alleged in the Action, or that could

13  have been alleged in the Action. *See Int'l Union of Operating Engineers-Employers Canst. Industry*

14  *Pension, Welfare and Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) ("res judicata

15  bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in

16  the prior action").

17  **III.    ARGUMENT**

18  **A.    The Proposed Class Action Settlement Should Receive Preliminary Approval**

19  Class action settlements must be approved by the court and notice of the settlement must be

20  provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent

21  class members' due process rights, approval of class action settlements involves three steps:

22      1.    Preliminary approval of the proposed settlement;

23      2.    Notice to the class providing them an opportunity to exclude themselves; and

24      3.    A final fairness hearing concerning the fairness, adequacy, and reasonableness of the

25          settlement.

26  *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

27  F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court may approve it

28  only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

**B.      The Class Representative and Class Counsel Will Adequately Represent the Class**

The putative class representative(s) and class counsel are adequate if: (1) the proposed representative Plaintiff does not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The adequacy requirement is met here as Plaintiff has and will represent Class Members with a focus and zeal true to the fiduciary obligation that she has undertaken. Plaintiff's counsel, Capstone Law APC ("Capstone"), also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). The attorneys at Capstone have successfully certified numerous class actions by way of contested motion in state and federal court, and have

negotiated settlements totaling over 100 million dollars on behalf of hundreds of thousands of Class Members. (*See* Perez Decl. ¶¶ 18-20, Ex. 2.)

**C.    The Settlement, as the Product of Arm's-Length Negotiations, is Entitled to a Presumption of Fairness**

In evaluating the Settlement for preliminary approval, the Court "first considers 'the means by which the parties arrived at settlement.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here, the Parties participated in a judicial settlement conference with the Hon. Joseph C. Spero. Judge Spero helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. A neutral's participation weighs considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.") At all times, the Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Capstone employs seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (*See* Perez Decl. ¶¶ 18-20, Exhibit 2.) Defendants are represented by Hunton Andrews Kurth LLP, a respected defense firm, who vigorously defended against the alleged claims.

As this Settlement is the "result of arms'-length negotiations by experienced class counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL 4010049, at *14 (internal citation omitted).

**D.    The Relief Provided by the Settlement is Fair and Reasonable**

At the preliminary approval stage, the Court evaluates whether the settlement is within the

"range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### 1.    The Class Settlement Amount is Within the Range of Reasonableness

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf—a $2,900,000 non-reversionary total Class Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from the Hon. Joseph C. Spero, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

1    625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

2         Federal district courts recognize that there is an inherent "range of reasonableness" in

3    determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any

4    particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

5    completion." *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm.*

6    *Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed

7    settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[6]

8         Plaintiff alleges that that from December 3, 2011 through December 1, 2014, Cinemark issued

9    66,527 wage statements to its California non-exempt employees that listed allegedly incorrect overtime

10   rates. As a result, Plaintiff argues class members could not determine what their correct overtime rate

11   was or whether they were paid correctly from their wage statements alone. Under Labor Code section

12   226(e), an employee suffering injury as a result of a knowing and intentional failure by an employer to

13   comply with 226(a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the

14   initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each

15   violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars

16   ($4,000), and is entitled to an award of costs and reasonable attorney's fees. Cinemark's maximum

17   potential exposure for wage statement violations would therefore be calculated approximately as follows:

18   [6,000 initial pay periods x $50] + [60,527 subsequent pay periods x $100] = $6,352,700 (not accounting

19   for the $4,000 cap).

20        PAGA penalties for wage statement violations would be calculated according to the formula set

21   forth in Labor Code section 2699(f): If, at the time of the alleged violation, the person employs one or

22   more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay

23   period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay

24   period for each subsequent violation.

25   _____

26   [6] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004)
     ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant,
     consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194
27   F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small
     percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the
28   percentage should be considered in light of strength of the claims").

Notwithstanding, some courts have interpreted Labor Code section 2699(f)(2) to impose the enhanced "subsequent violation penalty" or "heightened penalty" only after an employer has been notified that its conduct violates the Labor Code. *See Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ("courts have held that employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code"); *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*, No. 05cv1199–IEG–CAB, 2009 WL 2448430 (S.D. Cal. 2009) (finding that California law imposes the "subsequent violation penalty" only after an employer has been notified its conduct violates the Labor Code). While Plaintiff regards this interpretation as flawed, she nonetheless recognizes that this interpretation has gained traction with some courts, and elected therefore to conservatively estimate Defendants' maximum potential exposure for PAGA penalties by assessing a $100 penalty for all pay periods during the one-year statute of limitations: 66,527 pay periods x $100 = $6,652,700.

After calculating Cinemark's potential maximum exposure for wage statement and PAGA penalties, Class Counsel discounted that exposure for settlement purposes to account for the risks of continued litigation, including: (i) the strength of Cinemark's defenses; (ii) the risk of the Court finding that a PAGA trial would be unmanageable;[7] (ii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, and/or motions for summary judgment) which may have eliminated all or some of Plaintiff's claims, or barred evidence necessary to prove such claims; (iiii) the risk of losing at trial or prevailing on only some

---

[7] Although Plaintiff maintains that such a trial would be manageable, she is aware of the risks, as illustrated by the following cases: *See, e.g., Ortiz v. CVS Caremark Corp.*, No. C–12–05859 EDL, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014) ("[T]he Court finds that the PAGA claim in this case is unmanageable. In reaching this decision, the Court does not conclude that PAGA claims are unmanageable in general, but only that the circumstances of this case make the PAGA claim here unmanageable because a multitude of individualized assessments would be necessary"), *Brown v. Am. Airlines, Inc.*, No. CV 10–8431–AG (PJWx), 2015 WL 6735217, at *1 (C.D. Cal. Oct. 5, 2015) ("The Court finds manageability issues exist regarding PAGA overtime claims here. There appears to be too many individualized assessments to determine PAGA violations concerning overtime pay."), *Bowers v. First Student, Inc.*, No. 2:14–CV–8866–ODW (Ex), 2015 WL 1862914, at *4 (C.D. Cal. April 23, 2015) ("A PAGA claim can be considered unmanageable when a multitude of individualized assessments would be necessary"); *Litty v. Merrill Lynch & Co., Inc.*, No. CV 14–0425 PA (PJWx), 2014 WL 5904904, at *3 (C.D. Cal. Nov. 10, 2014) ("The circumstances of this case make the PAGA claim unmanageable because a multitude of individualized assessments would be necessary").

of the claims; (iv) the chances of the Court exercising its discretion to reduce PAGA penalties (*see* Lab. Code section 2699(e)); (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment (collectively, the "Discount Factors").

With respect to its defenses, among other things, Cinemark would have argued its wage statements accurately reflected the regular rate of pay and the amount of compensation earned in overtime wages since Cinemark argues an "overtime rate" is merely a multiplier of the regular rate of pay. Cinemark also would have argued that Plaintiff's theory of wage statement liability was rejected by the California Court of Appeal in *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018). *Maldonado* addresses two specific types of wage statement deficiencies: (1) wage statements that do not list all wages "earned" and (2) wage statements that do not list all hours "worked." Under *Maldonado*, the latter deficiency gives rise to a "presumption of injury" within the meaning of Labor Code section 226(e). *Id.* at 1336. The former does not. *Id.*

*Maldonado* involved a class of hourly employees who operated machines used to manufacture plastic bags at Epsilon's California factory. *Id.* at 1312. At four different times during the class period, class members worked an Alternative Workweek Schedule ("AWS"), under which they were paid for 10 hours at the regular rate of pay and 2 hours of overtime. *Id.* at 1312-21. The trial court concluded after a bench trial that the AWS was unlawful as it had not been properly adopted, and concluded that Epsilon's failure to pay overtime for the ninth and tenth hours of work, in reliance on the improperly adopted AWS, was not in good faith. *Id.* at 1320-26. As a result of the improperly adopted AWS, plaintiffs obtained judgment for unpaid overtime, interest, waiting time penalties, inaccurate wage statement penalties, and attorney's fees. *Id.* at 1312.

The trial court found that the wage statements were inaccurate because, whenever class members worked the AWS, the wage statements did not properly indicate the ninth and tenth hours were paid at the overtime rate. *Id.* at 1326. On appeal, Epsilon argued that the failure to pay overtime flowed from the improperly adopted AWS, rather than from the inaccurate wage statements. *Id.* at 1335. The Court of Appeal agreed, finding that whereas the failure to include "hours worked" would have given rise to a "presumption of injury," the failure to include wages "earned" did not:

> Subdivision (a) uses both the term "earned" and the term "worked." That is, categories (a)(1) and (a)(5) require the employer to provide information regarding the "gross wages

earned" and "net wages earned" respectively; but these two categories are excluded from subdivision (e)(2)(B)(i)'s list of those categories whose omission gives rise to a presumption of injury. In contrast, categories (a)(2) and (a)(9) refer to the "total hours worked," and "number of hours worked at each hourly rate." These categories are included in subdivision (e)(2)(B)(i)—if they are excluded from the wage statement, injury may be presumed. There is a clearly a significance to the Legislature's decision that injury is not presumed when a wage statement fails to include wages "earned" but is presumed when the wage statement fails to include hours "worked at" a particular rate. The difference, we believe, is to account for precisely this situation—where at the time the work was performed, the work was done and paid for at a particular rate, but it was subsequently determined that the employee had actually earned the right to additional compensation.

*Id.* at 1336.

Cinemark would also have argued, among other things, that without more, wage statement claims are nothing but technical violations for which Class Members suffer no injury. Before Section 226(e) was amended, the dispositive issue was whether "suffering injury" was satisfied by the deprivation of a legal right (i.e., an employer's provision of non-compliant wage statements), or by consequential damages caused by the non-compliant wage statements. Employers in federal court have prevailed in arguing for the latter interpretation. Even after the enactment of section 226(e), some courts have held that this amendment merely clarifies existing law and have held that plaintiffs must demonstrate actual injury. *See Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS 122873, **36-53 (N.D. Cal. Aug. 28, 2013) (granting summary judgment on wage statement claim because plaintiff could not show injury due to defects and that incorrect wage information is not willful).

Moreover, if liability had been established, among other things, Cinemark would have argued (by analogy to case law interpreting penalties under Labor Code sections 201 and 225.5), that it would be improper to assess $100 penalties for "subsequent violations" as there has been no formal finding of any "initial" violations. *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008) ("Although common sense might suggest a "subsequent" violation is nothing more than a violation that occurs at a later point in time after an "initial" violation, this definition is inadequate because the statutes provide for multiple penalties for "each failure to pay each employee" incurred in an initial violation . . . Until the employer has been notified that it is violating a Labor Code provision (whether or not the Commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a "violation" subject to penalties.")

Regarding PAGA penalties, it should be noted at the outset that the PAGA gives the Court wide latitude to reduce the amount of civil penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien*, 2011 WL 7563047, at *4 (C.D. Cal. 2011). For instance, in the *Lyft* case, the Court found that a $1 million PAGA settlement was fair and reasonable in light of the unsettled nature of the law, resulting in a $2.52 per pay period award to the aggrieved employees (there were 397,110 pay periods in a $1 million PAGA settlement, resulting in a 97.5% reduction from the maximum). In *Fleming v. Covidien*, the Court reduced the potential penalties by over 82%, awarding $500,000 for 28,742 pay periods at issue. *See also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven, remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code § 226 as redundant with recovery on a class basis pursuant to California Labor Code § 226, directly); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000.00); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000.00, after rejecting numerous other PAGA claims).

Taking into account the above defenses and the other Discount Factors, Plaintiff determined that a settlement of approximately 23% of Defendants' maximum potential exposure for class claims was fair and reasonable. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In*

*Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

> **2.      The Settlement Provides for an Equitable Method of Allocating Relief to Class Members**

The Settlement provides for an equitable method of allocating relief to Class Members in proportion to qualifying wage statements received. The Settlement Administrator will calculate amounts to be paid to Class Members as provided below and will pay all Individual Settlement Payments out of a qualified settlement fund, on a confidential basis and issue appropriate IRS tax forms. All Class Members who do not submit a timely and valid Request for Exclusion will receive an Individual Settlement Payment for their share of the Net Settlement Amount. After deducting the Enhancement Payment, Attorneys' Fees and Costs, the LWDA Payment, and the Settlement Administrator's fees and expenses, the balance of the Class Settlement Amount (the Net Settlement Amount) will be distributed to Class Members as follows:

- Defendants will calculate the total number of Individual Wage Statements for each Class Member, and the total of all Class Wage Statements received by Class Members during the Class Period.  All Class Members will be deemed to have received at least one Individual Wage Statement.

- Individual Settlement Payments:  To determine each Class Member's Individual Settlement Payment, the Settlement Administrator will use the following formula: Individual Settlement Payment = (Individual Wage Statements ÷ Class Wage Statements) × Net Settlement Amount.

The Individual Settlement Payments will be reduced by any required legal deductions or withholdings for each participating Class Member, if any.

All Individual Settlement Payments will be allocated as follows: one-hundred percent (100%) to statutory and civil penalties. The Individual Settlement Payments shall be reported on an IRS form 1099 by the Settlement Administrator. Class Members shall be responsible for remitting to State and/or Federal taxing authorities any applicable taxes due.[8]

For a Settlement Class of no more than 6,000 members, the average net recovery is approximately $295. This average net recovery is considerably greater than many wage and hour class action settlements approved by California state and federal courts with much broader releases. *See*, *e.g.*, *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

### 3. The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs

At final approval, Class Counsel will request attorneys' fees in the amount of one-third of the total common fund. Under controlling California law,[9] the common fund method for awarding

---

[8] Plaintiff Silken Brown and former plaintiffs Joseph Amey and Mario De La Rosa shall not receive an Individual Settlement Payment, having all previously released their individual claims in this case with prejudice. (Settlement Agreement ¶¶ III.E.4.)

[9] In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying

attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]).  Although California has no benchmark, California courts routinely award attorneys' fees equalling approximately one-third of the common fund's total potential value or higher.  *See, e.g.*, *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing one-third of the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted.

**E.     There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members**

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at **14, 16. This Settlement contains no "glaring deficiencies" *Id.* at *14. The Settlement does not provide for a reversion of unpaid settlement funds to Defendants or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id.* at *14-15

---

claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Because CAFA operates to modify the diversity requirement, "the *Erie* doctrine still applies so that state substantive law governs such claims in federal court." *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015) paragraph 10:497.5.  As the Ninth Circuit observed, "even after CAFA's enactment, *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state to federal court produces a change of courtrooms and procedure rather than a change of substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

(applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

Moreover, no segment of the Class is given preferential treatment, as the amount in settlement payment depends simply on the number of qualifying wage statements issued to each Class Member during the Class Period. Plaintiff will also seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive award in an amount that is well within the range of such awards in the Ninth Circuit for their work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See infra,* § III.G.  *See*, *e.g.*, *La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

## F.   The Court Should Approve the PAGA Component of the Settlement

Pursuant to the Settlement Agreement, $100,000 from the Class Settlement Amount will be allocated to the resolution of the PAGA claim, of which 75% ($75,000) will be paid directly to the LWDA, and the remaining 25% ($25,000) will become part of the Net Settlement Amount. (Settlement Agreement, Terms ¶ M.) This result was reached after good-faith negotiation between the Parties, and the allocation as a percentage of the Class Settlement Amount is consistent with other hybrid class/PAGA settlements approved by California courts.  *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 (approving $3.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1 (approving $6.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) (gross settlement fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Colsa v. Freeway Insurance Services, Inc.*, Case No. RIC 10018869 (Riverside County Super. Ct. July 30, 2012; Judge Sharon J. Waters) (gross settlement

fund of $3,200,000, of which $10,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) (gross settlement fund of $3,095,000, of which approximately $13,333 (or 0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was allocated to the settlement of PAGA penalties); *Sanchez v. Shakey's USA, Inc.*, No. BC424205 (L.A. County Super. Ct. July 30, 2014; Judge Amy D. Hogue) (gross settlement fund of $1,650,000, of which approximately $6,667 (or 0.4%) was allocated to the settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) (gross settlement fund of $1,535,000, of which $1,000 (or 0.1%) was allocated to the settlement of PAGA penalties).

Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

### G.   The Court Should Preliminarily Approve the Negotiated Class Representative Enhancement Payment

The Settlement provides for Class Representative Enhancement Award of $10,000,[10] for Ms.

---

[10] The amounts of the requested incentive awards are also reasonable by reference to the amounts that district courts in this Circuit have repeatedly found to be reasonable for wage and hour class action settlements.  *See*, *e.g.*, *Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG, *2 (N.D. Cal. Jan. 14, 2014) ($10,000 incentive payment in $3.4 million wage-and-hour class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3 million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to four class representatives in a $3.5 million settlement of an employment class action); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, **34-37 (C.D. Cal. Feb. 25,

Brown's service on behalf of the Settlement Class. "Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)).  These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to participate in the suit").

Plaintiff will file a formal motion for the negotiated Class Representative Enhancement Award once preliminary approval of the Settlement is granted.

**H.      The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement**

The proposed class settlement notice and claims administration procedure satisfy due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974).  Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id.*  Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175.

The Notice of Class and Collective Action Settlement ("Class Notice") was jointly drafted and approved by the Parties and provides Settlement Class Members with all required information, including information required or recommended by the Northern District of California's Procedural Guidance for Class Action Settlements (Dec. 5, 2018), so that each member may make an informed decision regarding

---

2008) ($20,000 and $10,000 award); *Amochaev v. Citigroup Global Markets, Inc*., No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of factors that included fear of workplace retaliation).

his or her participation in the Settlement.  Class Members will have 45 days from mailing of the notices to object to or opt out of the settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Requests for Exclusion or objections; the date for the final approval hearing; the formula used to calculate settlement payments and the class member's estimated settlement payment; instructions on how to dispute the number of Individual Wage Statements identified for each Class Member; information about the anticipated Class Representative Award, Attorneys' Fees and Costs to be sought by Plaintiff; a statement that the Court has preliminarily approved the settlement; and a statement that Class Members will release the settled claims unless they opt out.  Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  The Notice states that the Settlement does not constitute an admission of liability by Defendants, and that Final Approval has yet to be made.  The Notice thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Rule 23(c)(2)and (e); *Manual* §§ 8.21, 8.39; *Manual* §§ 30.211, 30.212.

The Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail.  (Settlement Agreement, Terms ¶ I(6).)  In the event any Notices are returned as undeliverable, the Settlement Administrator will attempt to locate a current address for the affected Class Members using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address.  (*Id.* ¶ I(7).  This method was negotiated by the Parties to maximize the Class Member notification rate while ensuring cost effective administration of the Settlement.  Additionally, the Notice provides information recommended by the Northern District of California's Procedural Guidance for Class Action Settlements (Dec. 5, 2018), including contact information for class counsel to answer questions, the address for a website to be maintained by the Settlement Administrator with links to the Notice, motions for approval and for attorneys' fees, and instructions on accessing the case docket

via PACER or in person.

**I.      Class Action Fairness Act Disclosures Will Be Issued Timely By Defendants.**

Defendants removed this Action to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.* ("CAFA"), and the disclosure/notice requirements of 28 U.S.C. § 1715(b) therefore apply.  Based on Defendants' representations, substantial efforts have been made to identify each Class Members' last known address, but current address information for some may not be known. To ensure proper CAFA notice in the event that Class Members have moved or reside in jurisdictions other than their last known address, Cinemark intends to send its disclosures to the United States Attorney General (or Acting Attorney General) and representatives of all 50 states and the District of Columbia.  These disclosures will include the categories of information required by § 1715(b) and will be mailed within 10 days of the filing of this Motion for Preliminary Approval and, in accordance with CAFA, final approval of the proposed settlement will not be requested until 90 days after service of the CAFA disclosure.

**IV.      CONCLUSION**

The Parties have negotiated a fair and reasonable settlement of claims.  Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.


Dated:  February 6, 2019                              Respectfully submitted,

                                                     CAPSTONE LAW APC

                                        By: /s/ Robert J. Drexler, Jr.
                                             Raul Perez
                                             Robert J. Drexler, Jr.
                                             Moly DeSario
                                             Jonathan Lee

                                             Attorney for Plaintiff Silken Brown and the Class